**Jose Valentin LOPEZ–NIEVES, Petitioner, Appellant,**

v.

**UNITED STATES of America, Respondent, Appellee.**

**No. 89–1905.**

United States Court of Appeals, First Circuit.

Heard Sept. 13, 1990.

Decided Oct. 29, 1990.

**646**

Lydia Lizarribar–Masini, Old San Juan, P.R., for petitioner, appellant.

Juan A. Pedrosa, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for respondent, appellee.

Before SELYA, Circuit Judge,
COFFIN, Senior Circuit Judge, and
BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

Jose Valentin Lopez–Nieves appeals from the denial of his *pro se* 28 U.S.C. § 2255 motion to vacate and set aside his guilty plea and sentence for a one-count indictment under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Appellant claims that he received ineffective assistance of counsel and that his guilty plea was invalid.

Lopez–Nieves and Juan Robles–Rodriguez were indicted on February 4, 1987, for aiding and abetting each other knowingly and intentionally to possess with intention to distribute 50.9 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Criminal No. 87–029 (JAF). Robles–Rodriguez pled guilty, received an eight-year prison term and is not involved in this appeal.

Lopez–Nieves pled guilty to the charge on March 31, 1987. On May 13, 1987, the United States District Court for the District of Puerto Rico sentenced him to a fifteen-year prison sentence concurrent to a sentence imposed earlier that day for another federal narcotics violation. (Criminal No. 86–419 (PG). In addition, appellant was fined $100,000, given a special parole term of five years and ordered to pay a special monetary assessment of $50.

On December 30, 1988, Lopez–Nieves filed a *pro se* motion under 28 U.S.C. § 2255 alleging that he had been denied effective assistance of counsel and that his guilty plea was invalid. Pursuant to Rule 4(b) of the rules governing 28 U.S.C. § 2255 proceedings in United States district courts, the district court denied the motion without a hearing on the ground that Lopez–Nieves' claims were patently incredible or conclusively refuted by the record. Opinion and Order, August 1, 1989. On September 12, 1989, appellant filed his notice of appeal.

While the case was on appeal, counsel for Lopez–Nieves filed sworn statements, letters and other documents which the district court determined merited further examination. This resulted in a hearing after which the district court again denied Lo-

pez–Nieves' motion to set aside his guilty plea and to vacate his sentence. An appeal was taken from the denial of the motion. The district court referred "serious ethical violations" allegedly committed by Antonio Cordova–Gonzalez, the attorney who had represented appellant at the change of plea and sentencing, to the judges of the district court of Puerto Rico for collective consideration. Opinion and Order, July 30, 1990, at 1. A complaint seeking Cordova–Gonzalez's disbarment is now pending before the district court. *In re Antonio Cordova–Gonzalez,* —— D.P.R. ——, 90 J.T.S. 28 (1990).

## TIMELINESS OF THE NOTICE OF APPEAL

■ Although at oral argument the government seemed to concede that appellant's original notice of appeal was timely, we address the issue. Under Rule 4(a)(1) of the Federal Rules of Appellate Procedure,

> In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals ... if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry.

Rule 4(a)(1)'s 60–day time limit governs appeals from orders entered on § 2255 motions. Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. *See also United States v. Hayman,* 342 U.S. 205, 209 n. 4, 72 S.Ct. 263, 267 n. 4, 96 L.Ed. 232 (1952) ("[a]ppeals from orders denying motions under Section 2255 are governed by the civil rules applicable to appeals from final judgments in habeas corpus actions"); *United States v. Zuleta–Molina,* 840 F.2d 157, 158 (1st Cir.1988); *Mercado v. United States,* 183 F.2d 486, 487 (1st Cir.1950). Appellant filed his appeal within the 60 days allowed under Fed.R.App.P. 4(a)(1); therefore, this appeal is not time-barred.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant claims that he failed to receive effective assistance of counsel in violation of the sixth amendment of the United States Constitution.

### Representation By Two Attorneys

Lopez–Nieves hired two lawyers, Cordova–Gonzalez and Jose Ortiz–Miller, to represent him following his February 4, 1987, indictment. When appellant was later charged in a multi-defendant drug indictment known as Operation Ali–Baba (Criminal No. 87–251 (PG)), he again retained Cordova–Gonzalez, pled guilty and received an eight-year sentence, consecutive to the prior one. Lopez–Nieves had also retained Cordova–Gonzalez as counsel in prior criminal proceedings and civil forfeiture cases. Lopez–Nieves claims that Cordova–Gonzalez's services were unreasonably poor and were tainted by various conflicts of interest, but he makes no similar claims regarding the services of Ortiz–Miller.

Cordova–Gonzalez, in an "informative" motion filed August 30, 1990, justifying legal fees in excess of $100,000 for representation in this case alone, claimed that Ortiz–Miller had resigned as counsel during the case. However, nothing in the record or in Lopez–Nieves' § 2255 motion or appeal indicates that Ortiz–Miller withdrew. At Lopez–Nieves' change of plea hearing on March 31, 1987, Cordova–Gonzalez told the court that Ortiz–Miller was co-counsel. Appellant told the court that he had had ample time to discuss his case with *both* of his attorneys and that he was satisfied with their work. At oral argument before this court, appellant's lawyer (the third one) stated that Lopez–Nieves had been represented by two attorneys at the change of plea hearing and the sentencing hearing. We uphold the district court's finding that appellant was represented by two attorneys, at least one of whom rendered competent legal services. Opinion and Order, July 30, 1990, at 13.

Although the presence of a second attorney during the proceedings seriously undermines appellant's claim of ineffective assistance of counsel, we have nonetheless examined Cordova–Gonzalez's performance and find that it fell within the wide range

of "reasonable" competence allowed by law.

*The Legal Standard*

█ A conviction may be set aside because of ineffective assistance of counsel if (a) considering all the circumstances, counsel's performance fell below an objective standard of reasonableness, and (b) there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Panzardi–Alvarez v. United States,* 879 F.2d 975, 982–83 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990); *Perron v. Perrin,* 742 F.2d 669, 672–73 (1st Cir.1984). The *Strickland* test imposes "highly deferential" judicial scrutiny of counsel's performance and "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065.

█ The *Strickland* test applies to guilty plea challenges based on ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To meet the first part of the *Strickland* test, a counseled guilty plea must be based on advice which "[is] within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369, *quoting McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). A guilty plea is valid only if based on "a voluntary and intelligent choice among the alternative courses of action open to the defendant," *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369, *quoting North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). The *Strickland* test's requirement of prejudice is met if "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. at 59, 106 S.Ct. at 370. Based on the uncontradicted facts, we are unable to find

that Lopez–Nieves received ineffective assistance by his counsel.

*Conflict of Interest*

█ On May 6, 1987, Cordova–Gonzalez borrowed $100,000 from Lopez–Nieves. A bearer's note secured by a mortgage deed was executed on May 6 before a notary public. Appendix of Appellant, Exhibit 1. The note does not specify an interest rate. The note is in Spanish, and no translation of it has been submitted. We think, however, that our description of it is correct.

The district court found that the loan did not adversely affect the quality of legal services rendered by Cordova–Gonzalez. It did find, however, that the loan transaction was not fair and reasonable to Lopez–Nieves. The best way to understand the "note" issue is to quote from the findings of the district court:

> The documentary evidence [submitted after the motion to set aside the guilty plea was denied] is mainly correspondence by Cordova–Gonzalez to both defendant and his wife. The bulk of it is dated in 1988, several months after our May 13, 1987 sentence. The testimony received on said documentary evidence shows that a good part of the dispute on ineffective assistance of counsel was fueled not so much by work done by Cordova–Gonzalez as a lawyer, but on the differences between the lawyer and his client on the loan. The parties still disagree on whether the loan is outstanding, on what were the terms of payment, and on whether Cordova–Gonzalez could pay back the loan with professional services. It is not clear whether the $100,000 loan disbursement was made independent of the $100,000–plus fee for legal services. The correspondence and testimony show that the May 6, 1987 $100,000 loan prompted at least part of the post-sentence Rule 35 efforts by Cordova–Gonzalez. Our best assessment of the parties' positions is that Cordova–Gonzalez filed several Rule 35 requests to help his client and to justify the payment of the loan with professional services. The evidence fails to disclose that the loan trans-

action was fair and reasonable to the client and that its terms were fully disclosed and transmitted to the client in writing in a manner which could be reasonably understood by Lopez–Nieves and his wife. The client was not given a reasonable opportunity to seek the advice of independent counsel in the transaction. There was no clear, unequivocal consent in writing by Lopez–Nieves on whether the agreed $100,000 legal fee was a separate, independent transaction from that of the loan. We also note that the correspondence generated by Cordova–Gonzalez and directed to his client and his family stand far from the professional model one would expect. Aside from the legally unusual, and at times vulgar, content, the correspondence may be interpreted to mean that Cordova–Gonzalez had access to judges who would grant his client special favors. In so doing, Cordova–Gonzalez did no favor to his client, to his profession nor to the court.

Opinion and Order, July 30, 1990, at 11–12 (footnotes omitted).

We agree with the district court that "even considering the ethical implications of Cordova–Gonzalez's representation, the same did not fall below constitutional standards." Opinion and Order, July 30, 1990, at 13. Finally, we note that in his *pro se* brief appellant claims that the loan motivated Cordova–Gonzalez's advice to plead guilty because a guilty plea might delay or terminate Cordova–Gonzalez's obligation to repay the $100,000 owed. This claim has no factual basis. The guilty plea was entered on March 31, 1987, more than a month prior to the date of the loan. The loan, therefore, could not have been a factor affecting Cordova–Gonzalez's advice to appellant to plead guilty.

Appellant's second claim that a conflict of interest impaired Cordova–Gonzalez's representation also lacks merit. Appellant claims that Cordova–Gonzalez informally represented his co-defendant, Robles–Rodriguez, in the early phases of this case. The record, however, shows that a public defender was appointed to represent Ro-

bles–Rodriguez, and appellant has provided us with no evidence to the contrary.

*Representation at Sentencing*

Lopez–Nieves claims that Cordova–Gonzalez's conduct throughout the proceedings, particularly at his sentencing hearing, fell below a reasonable level of competence. For example, he asserts that when Cordova–Gonzalez appeared twice on his behalf for sentencing in two different cases on May 13, 1987, "[he] made practically identical statements on behalf of Petitioner. Yet, each case was totally unrelated. Thus, counsel neglected to present a defense that would comport to the facts." Brief for Appellant at 19. Appellant also claims that Cordova–Gonzalez portrayed him to the court as an incorrigible person who deserved severe punishment. *Id.* at 21.

The docket shows that Cordova–Gonzalez filed numerous pre-trial motions for Lopez–Nieves and later aggressively argued a Fed.R.Crim.P. 35 motion for reduction of sentence, seeking concurrent rather than consecutive sentences in this case and Crim. No. 86–419(PG). Cordova–Gonzalez also arranged for his client to cooperate with the prosecution of the Operation Ali–Baba defendants in exchange for post-sentence relief. (Lopez–Nieves later recanted and refused to testify before a federal grand jury.) Finally, the transcripts from both the change of plea and sentencing hearings reveal vigorous efforts by Cordova–Gonzalez to convince the court to impose as lenient a sentence as possible. Despite these efforts, Lopez–Nieves argues that Cordova–Gonzalez's representation was unreasonably poor because he "failed to establish petitioner's role in the offense" at the sentencing hearing.

Appellant objects to Cordova–Gonzalez's advice to plead guilty, his courtroom statements and his courtroom silences. But "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066. Viewed in this light, we reject Lopez–Nieves' claim that Cordova–

Gonzalez's representation was so unreasonably poor that Lopez–Nieves was denied the effective assistance of counsel.

*Failure to Seek Psychiatric Evaluation*

■ Lopez–Nieves further claims that Cordova–Gonzalez unreasonably failed to request a psychiatric evaluation to determine his competence to plead guilty. Appellant relies on prison records, not in evidence, to show that he was addicted to heroin and pled guilty while in a drugged state of mind. The district court found these claims "meritless." We agree. Lopez–Nieves himself stated when he pled guilty that he was not under the influence of drugs and that he had taken drugs during the previous nine months in jail. The district court found this testimony convincing, stating that "there was no indication or allegation during either the change of plea or sentencing hearings that petitioner was incompetent." Opinion and Order, August 1, 1989, at 1–2. The record contains no evidence to the contrary. We uphold the district court's determination that the lack of a psychiatric evaluation did not deny appellant effective assistance of counsel. Brief for appellant at 18.

*Lack of Prejudice*

To satisfy the "prejudice" requirement of the *Strickland* test, appellant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. at 59, 106 S.Ct. at 370. Lopez–Nieves claims that were it not for Cordova–Gonzalez's advice, he would have gone to trial and would probably have been convicted of a lesser crime and received a lighter sentence.

The district court found that the amount and quality of evidence which the government had accumulated against Lopez–Nieves was "overwhelming." Opinion and Order, July 30, 1990, at 16. We agree. At the change of plea hearing, the government made a proffer of evidence which included the following: Lopez–Nieves and Robles–Rodriguez received $1,900 in exchange for cocaine from a Drug Enforcement Adminis-

tration Task Force undercover agent on February 21, 1986; the sale took place at 69 Cucharilla Street, a property owned by Lopez–Nieves in Catano, Puerto Rico; and, the DEA agent who had bought the cocaine from Lopez–Nieves and Robles–Rodriguez would have testified for the prosecution.

While the "overwhelming" evidence suggests that appellant's decision to plead guilty was a rational choice, we need not reach the issue of prejudice because appellant has failed to meet the first part of the *Strickland* test. There is no convincing evidence that counsel's representation fell below an objective standard of reasonableness. Appellant's 28 U.S.C. § 2255 motion to vacate and set aside his guilty plea and sentence on account of ineffective assistance of counsel was properly denied.

## INVALID GUILTY PLEA

■ Lopez–Nieves claims that his guilty plea was invalid because it was the product of misinformation and threats from his attorney. A guilty plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369, *quoting North Carolina v. Alford,* 400 U.S. at 31, 91 S.Ct. at 164. Appellant claims that his attorney coerced him to plead guilty in order to avoid paying him the money owed. We have already shown that the loan was made *after* the guilty plea. And, the record belies this allegation. Lopez–Nieves stated at his change of plea hearing that he was pleading guilty of his own volition, and two months later at his sentencing hearing he confirmed that he freely wished to plead guilty and forego a jury trial. There is no evidence in the record to support the claim that Lopez–Nieves' guilty plea was coerced.

Lopez–Nieves claims that his guilty plea was involuntary because he was misinformed about its consequences. Cordova–Gonzalez told him that he had influence with the judges who would sentence him, and thus, he could guarantee that Lopez–Nieves would be given concurrent sentences. The record shows that while Cor-

dova–Gonzalez promised Lopez–Nieves concurrent sentences if he pled guilty, appellant's other attorney, Ortiz–Miller, consistently advised him that obtaining concurrent sentences would be unlikely and that he could face the maximum penalty if he pled guilty. Furthermore, at the change of plea hearing Lopez–Nieves stated that he understood that he could receive a fifteen-year consecutive sentence if he pled guilty to the charges. Appellant's claim that his guilty plea was based upon incorrect information does not stand scrutiny.

Appellant raises other issues which we need not discuss because they lack merit and do not warrant further attention.

Appellant's motion to supplement the record is granted.

*Affirmed.*