**Eric Michael LEWIS, aka Richard Thomas Lewis, Jr., Petitioner,**

v.

**Larry WITEK, Warden, et al., Respondents.**

**Case No. CV 94–1158–LGB(RMC).**

United States District Court, C.D. California.

May 15, 1996.

Eric Michael Lewis, Chino, CA, pro se.

Sharon Wooden Richard, California Office of Attorney General, Los Angeles, CA, for defendants.

### ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

BAIRD, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of the United States Magistrate Judge, as well as petitioner's objections filed April 26, 1996, and has made a *de novo* determination of the Report and Recommendation.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner and counsel for respondents.

### REPORT AND RECOMMENDATION ON A STATE HABEAS CORPUS PETITION

CHAPMAN, United States Magistrate Judge.

This report and recommendation is submitted to the Honorable Lourdes G. Baird, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

### BACKGROUND

#### I

On May 11, 1989, an Information was filed charging petitioner Eric Michael Lewis with first degree murder in violation of California Penal Code ("P.C.") § 187 **with** a special circumstance allegation of murder for financial gain (P.C. § 190.2(a)(1)), as well as two sentence enhancements for the personal use of a firearm (P.C. §§ 1203.06 and 12022.5). On July 25, 1989, petitioner pleaded guilty to, and was convicted of, first degree murder (P.C. § 187) and the personal use of a firearm (P.C. §§ 1203.06 and 12022.5). The petitioner was sentenced to 25 years to life for the murder plus two consecutive years for the personal use of a firearm, **with the possibility of parole.** The petitioner did not appeal his conviction. He filed a petition for writ of habeas corpus in the state courts, and the petition was denied by the California

Court of Appeal on August 10, 1993, and by the California Supreme Court on December 29, 1993.

The petitioner filed the instant petition for writ of habeas corpus on February 24, 1994. The petition for writ of habeas corpus challenges petitioner's conviction on two primary grounds: (1) that petitioner was induced to enter into a fraudulent plea agreement from which he received no benefit; and (2) that petitioner received ineffective assistance of trial counsel in that trial counsel (a) failed to file a notice of appeal,[1] (b) advised petitioner to accept a plea bargain from which he received no benefit, and (c) failed to carefully investigate and prepare a defense raising, among other things, that petitioner's confession was involuntary and coerced.

■ The respondents filed their return on April 29, 1994, contending that petitioner failed to exhaust his state court remedies regarding the claim that trial counsel was ineffective for failing to appeal the conviction. On May 12, 1994, petitioner filed a traverse, in which he asserted that he never alleged "that defense counsel refused to appeal petitioner's judgment of conviction" and that there is "*only one issue in this petition:* The Ineffective Aid of Counsel, based primarily on counsel's misadvising petitioner to accept a plea bargain, and, plead guilty to Murder First, with a gun allegation, 27–years to Life, in exchange for a worthless dismissal of the Special Circumstances allegation of 'Murder for Financial Gain'[.] [¶] Any and all other references to the unprofessional lapses of this court-appointed counsel are intended only as foundational facts revealing the deliberate and calloused handling of petitioner in this case." (emphasis in original). Based on petitioner's representation, Magistrate Judge Andrew J. Wistrich, on October 4, 1994, issued an order in which he found that petitioner raises only the issue of ineffective assistance of counsel based primarily on counsel's misadvising petitioner to accept a

plea bargain, required respondents to address the merits of petitioner's claim, and set a new briefing schedule. Thereafter, respondents filed a supplemental return on January 26, 1995, addressing the merits of petitioner's claim. The petitioner filed a second supplemental traverse on August 10, 1995. In his second supplemental traverse, petitioner discussed issues in addition to the issue found by Judge Wistrich[2]. The respondents have filed the declaration of petitioner's trial counsel, Milton Bodek ("Bodek"), and petitioner has filed his own declarations. In response to the Court's Order, respondents have lodged transcripts of the taped interviews with petitioner.[3]

**II**

On April 26 and April 27, 1989, a preliminary hearing on the charges was held in the Municipal Court of the Los Angeles Judicial District. The petitioner was represented at the preliminary hearing by retained counsel (not the trial counsel petitioner contends provided ineffective assistance). The evidence at the preliminary hearing showed the following: The petitioner was engaged to be married to Beverly Jordan (hereafter "Jordan"), with whom he lived. Jordan's body was discovered in her vehicle on the morning of November 29, 1988. (Vol. 1 Reporter's Transcript ("RT") 5:28–6:6). She had been shot four times at close range, and four shell casings were recovered at the murder scene. (1RT 48:1–49:11). A few days earlier, Jordan had taken out a life insurance policy in the amount of $150,000.00 and named petitioner as the beneficiary. (1RT 74:28–75:2, 75:25–26, 76:1–4, 12–17). The petitioner frequently asked Jordan whether the initial premium on the policy had been paid. (1RT 35:20–23). In fact, the initial premium was never paid. (1RT 93:19–21). Shortly before her death, Jordan discovered that petitioner had taken approximately $7,000.00 of her money and never deposited it into their joint

---

1. This claim was waived by petitioner in his traverse, as discussed below.

2. The Court will not consider new issues raised in the Second Supplemental Traverse. *Cacoperdo v. Demosthenes,* 37 F.3d 504, 506 (9th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 1378, 131 L.Ed.2d 232 (1995).

3. The respondents contend these tapes have not been transcribed previously, and they were transcribed solely for this proceeding. Apparently the "transcript" submitted by petitioner is, thus, his transcription of the tapes.

account, as he said he would. (1RT 20:27–22:23, 28:7–30:20). The petitioner had substantial credit card and other debts. (1RT 78:15–19, 84:12–86:10). Earlier in November, petitioner had paid almost $1,000.00 to purchase a time share, of which Jordan may not have been aware. (1RT 86:21–87:7). A few days before Jordan's death, petitioner told another woman that he did not want to marry Jordan and that he really loved the other woman, and he asked her to have sex with him in a nearby hotel. (1RT 70:4–14, 71:27–72:13, 73:5–9). Sometime on the day of Jordan's murder, the answering machine at the apartment petitioner shared with Jordan was changed by petitioner from a message saying "We" are not available and will return your call to a message saying "I" am not available and will return your call. (1RT 36:15–37:7).

After Jordan's body was discovered, police officers Kenneth Crocker ("Crocker") and John Birrer ("Birrer") attempted to contact petitioner. They were told by the manager of petitioner's apartment building that petitioner was out-of-town; petitioner had told the manager that he was out-of-town when he responded to the manager attempting to evict him after his November rent check was returned "not sufficient funds." (1RT 13:6–15). Upon calling petitioner's work place, petitioner answered the telephone and the officers became suspicious. (1RT 101:22–102:14). They waited for petitioner at his apartment, and when he arrived home from work, arrested him and placed him in handcuffs in the police car. (1RT 103:12–14, 106:5–11, 106:28–107:4, 139:13–15). The petitioner was given his *Miranda*[4] rights, which he waived. (1RT 97:12–98:25). The petitioner consented to the search of his apartment and vehicle. (1RT 96:10–12, 134:3–7).

The petitioner was then taken to the police station and interviewed. (1RT 98:28–99:7). In the first (taped) interview, petitioner stated he had seen Jordan that morning when they together had looked at a new condominium, but he had left Jordan near the condominium sitting alone in her vehicle. (1RT 118:23–119:3). The petitioner then requested an attorney, and the interview was stopped. (1RT 129:25–130:13, 149:27–150:4). The in-

terview lasted for 45–60 minutes. (1RT 119:20–120:8). Birrer determined there was sufficient evidence to book petitioner, and advised him he was being booked. (1RT 130:15–20, 131:11–132). After a few minutes, petitioner asked to be reinterviewed and the second interview commenced. (2RT 12:17–21). Before the second interview commenced, however, petitioner signed a written waiver relinquishing his request for an attorney and stating he wanted to continue the interview. (1RT 120:19–122:18, 123:8–28). In the second (taped) interview, which lasted less than an hour, petitioner confessed to killing Jordan during an argument and offered to show the police where he had thrown away the components of the gun used in the killing. (1RT 132:9–133:3). The police went with petitioner to several trash bins, and recovered parts of a gun. The gun that was recovered was matched ballistically to the bullets and cartridges that killed Jordan. (Suppl.Return, Exh. E, 14:24–26).

During the preliminary hearing, there was considerable discussion among the prosecutor, retained counsel and the court whether retained counsel, in cross-examining the police officers, was converting the preliminary hearing into an evidentiary hearing and moving to suppress petitioner's confession under P.C. Section 1538.5, based on lack of probable cause for petitioner's arrest. (1RT 108:26–114:13, 142:17–143:9). Retained counsel stated that she was not making a motion to suppress but rather, asking questions relevant to the voluntariness of the confession. At the end of the preliminary hearing, retained counsel made a motion to dismiss the special circumstance allegation of murder for financial gain (2RT 31:25–26, 36:23–25), which the court denied (2RT 38:15–22). Retained counsel then requested that the court appoint her to represent petitioner, which the court denied; instead, the court appointed the public defender to represent petitioner. (2RT 28:28–39:16, 39:25–40:1).

When petitioner pleaded guilty to violating P.C. §§ 187, 1203.06 and 12022.5, he stated that he was freely and voluntarily waiving his right to a jury trial, his rights to cross-examine and confront witnesses, his right to

4. 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966).

compulsory process and his right against self-incrimination. (Suppl.Return, Exh. D., 3:3–5:2). The prosecutor advised petitioner that the offenses carried a maximum sentence of 27 years to life, which petitioner acknowledged; and that he would receive the sentence of 27 years to life, which petitioner also acknowledged. (Suppl.Return, Exh. D., 5:3–8; 5:16–18). The petitioner represented there had been no threats or promises made to him. (Suppl.Return, Exh. D., 5:9–15). The defense counsel stipulated that there was a factual basis for the plea, and the court found that he was satisfied with the waivers. (Suppl.Return, Exh. D, 27:13–18, 28:6–12). At the end of the sentencing hearing, the prosecutor moved to dismiss the special circumstance allegation of murder for financial gain, and the court granted the motion. (Suppl.Return, Exh. D., 48:25–27).

## DISCUSSION

### 1. Plea Bargain:

■ The plea bargain between the prosecution and petitioner allowed petitioner to plead guilty to first degree murder, and the two sentence enhancements for the personal use of a firearm, in exchange for the prosecution dropping the special circumstance allegation of murder for financial gain. The petitioner argues that he did not receive any benefit from the plea bargain because the prosecution could not have proven the special circumstance allegation of murder for financial gain. Specifically, petitioner argues that because the first premium payment on Jordan's life insurance policy was not paid, he could not have collected on the life insurance.

■ A guilty plea must be voluntary and intelligent, entered with a sufficient awareness of the relevant circumstances and likely consequences resulting from a waiver of certain fundamental rights. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Voluntariness must be demonstrated by tangible evidence in the record, as determined by the totality of the circumstances surrounding the plea. *Brady v. United States,* 397 U.S. at 749, 90 S.Ct. at 1469; *Boykin v. Alabama*, 395 U.S. at 242, 89 S.Ct. at 1712. "The longstanding

test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)).

■ Here, there is no doubt that petitioner's plea was voluntary. The record of the plea shows he specifically waived his rights to jury trial, confrontation and the privilege against self-incrimination. *Boykin v. Alabama*, 395 U.S. at 243, 89 S.Ct. at 1712; *United States v. Ullyses–Salazar*, 28 F.3d 932, 939 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1367, 131 L.Ed.2d 223 (1995). He was advised of the charges and the sentence he was to receive. The petitioner was not threatened, or pressured to plead guilty, as he acknowledged. *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir.1986).

■ The petitioner, nevertheless, argues that the plea agreement was "fraudulent," asserting he got no benefit from it. The petitioner is in error. Under California law, "[p]roof of actual pecuniary benefit to the defendant from the victim's death is neither necessary nor sufficient to establish the financial-gain special circumstance.... '[T]he relevant inquiry is whether the defendant committed the murder in the expectation that he would thereby obtain the desired financial gain.'" *People v. Edelbacher*, 47 Cal.3d 983, 1025, 766 P.2d 1, 254 Cal.Rptr. 586 (1989) (quoting *People v. Howard*, 44 Cal.3d 375, 409, 749 P.2d 279, 243 Cal.Rptr. 842, *cert. denied*, 488 U.S. 871, 109 S.Ct. 188, 102 L.Ed.2d 157 (1988); *See also People v. Noguera*, 4 Cal.4th 599, 635–36, 842 P.2d 1160, 15 Cal.Rptr.2d 400 (1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 2780, 129 L.Ed.2d 892 (1994); *People v. McLead*, 225 Cal.App.3d 906, 918, 276 Cal.Rptr. 187 (1990); *People v. Silberman*, 212 Cal.App.3d 1099, 1114, 261 Cal.Rptr. 45 (1989), *cert. denied*, 494 U.S. 1087, 110 S.Ct. 1827, 108 L.Ed.2d 956 (1990). The jury instruction on the special circumstance of murder for financial gain, CALJIC No. 8.81.1, similarly, requires the jury find that the murder was intention-

al.[5] Thus, the perpetrator's state of mind is the key to determining whether the special circumstance of murder for financial gain can be proved.

 The petitioner's *expectation* of receiving the life insurance proceeds, rather than his actual receipt of such proceeds, is the issue regarding the life insurance policy. From the evidence at the preliminary hearing, it appears that the prosecution could have presented evidence showing petitioner had the expectation he would receive the life insurance proceeds. *See People v. Hamilton,* 48 Cal.3d 1142, 1178, 774 P.2d 730, 259 Cal.Rptr. 701 (1989). Certainly, petitioner was well-aware of the policy and that he was the beneficiary. Apart from petitioner's expectation of receiving the life insurance proceeds, the prosecution could have presented evidence showing petitioner had the expectation of other financial benefit from Jordan's death. "[A] murder for the purpose of avoiding a debt is a murder for financial gain within the meaning of [Penal Code] section 190.2 subdivision (a)(1)." *People v. Edelbacher,* 47 Cal.3d at 1025, 766 P.2d 1, 254 Cal.Rptr. 586. Of particular applicability to this case is the opinion in *People v. Silberman.* There, Silberman murdered a long-time friend and business associate from whom he had been stealing when he became fearful his theft or embezzlement was about to be discovered. Holding the murder to have been for financial gain, the court noted that Silberman "could well have been motivated by the belief that all trace of these unrecorded transactions [thefts] would be obliterated by killing" the victim. *Silberman,* 212 Cal.App.3d at 1115, 261 Cal.Rptr. 45. Here, Jordan had discovered that petitioner had taken money from her and used it for purposes other than authorized by her. With Jordan gone, it was unlikely petitioner would have to repay the money.

First degree murder with the special circumstance of murder for financial gain is punishable by death or life imprisonment without possibility of parole. The penalty for first degree murder is 25 years to life with the possibility of parole. Thus, the plea bargain provided a real benefit to petitioner; it allowed him to be sentenced to the indeterminate term of 27 years to life with the possibility of parole. Contrary to petitioner's assertion that the special circumstance allegation of murder for financial gain could never have been proved because the first premium on the life insurance policy was not paid, the allegation could have been proved and petitioner's trial attorney was justifiably concerned that it could have been proved. The threat that petitioner could have been sentenced to the death penalty or life in prison without the possibility of parole was real, and that threat was removed under the terms of the plea agreement.

## 2. Ineffective Assistance of Counsel:

 Claims of ineffective assistance of counsel are analyzed under the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner bears the burden of establishing both components. *Id.; United States v. Quintero–Barraza,* 57 F.3d 836, 840 (9th Cir.1995). First, the petitioner must show that counsel's representation fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. In making this showing, the petitioner must overcome the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066; *United States v. Palomba,* 31 F.3d 1456, 1460 (9th Cir.1994). Only if counsel's acts and omissions, examined within the context of all the surrounding circumstances, were outside the wide range of professionally competent assistance, will the petitioner meet this initial burden. *Strickland* at 690, 104 S.Ct. at 2065–66; *Quintero–Barraza,* 57 F.3d at 840. If petitioner makes this showing, he must then establish prejudice by showing there is "a reasonable probability that, but for counsel's

---

5. To find that the special circumstance, referred to in these instructions as murder for financial gain, is true, each of the following facts must be proved:

 1. The murder was intentional, and

2. It was carried out for financial gain [, and

3. [The] [A] defendant believed the death of the victim would result in the desired financial gain.]

unprofessional errors, the result of the proceeding would have been different." *Id.*

### a. Plea Agreement:

 The *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Lopez–Nieves v. United States,* 917 F.2d 645, 648, (1st Cir.1990). "In the context of guilty pleas, the first half of the *Strickland* ... test is nothing more than a restatement of the standard of attorney competence.... The second, or 'prejudice' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370.

 "Where ... a defendant is represented by counsel during the plea process and enters his guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was 'within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369. "When considering a claim of ineffective assistance, we focus on the assistance actually received by the defendant. The purpose of the right to effective assistance of counsel is not to pass judgment on the actions of defense attorneys, but to insure that criminal defendants receive the zealous, competent defense to which they are entitled." *Chacon v. Wood,* 36 F.3d 1459, 1464 (9th Cir.1994).

The petitioner's claim that his trial counsel was ineffective for advising him to plead guilty is without merit. The overwhelming evidence suggests that petitioner's decision to plead guilty was a rational choice. The petitioner received substantial benefit from the plea bargain when the special circumstance of murder for financial gain was dismissed, ending the threat he could be sentenced to death or life imprisonment without parole. Instead, petitioner was sentenced to 27 years to life with the possibility of parole. Because petitioner has failed to meet the first part of the *Strickland* test, we need not reach the issue of prejudice. *See Lopez–Nieves,* 917 F.2d at 650.

### b. Confession:

 The petitioner also contends that he received ineffective assistance of counsel because he had a viable defense to the introduction into evidence of his confession. The petitioner claims that his confession was false and coerced, and that the police continued to question him after he invoked his right to counsel. He asserts that he was subject to psychological and physical coercion because he was in police custody for several hours, tired, hungry, and not feeling well due to high blood pressure. In support of his contention, petitioner has submitted his own declarations. Contradicting petitioner's declarations is the testimony of Crocker and Birrer and another police officer at the preliminary hearing, as well as the written waiver by petitioner relinquishing his request for counsel.

 Once a suspect in custody requests counsel, the interrogation must cease until a lawyer has been made available or the suspect reinitiates the conversation. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *Hendricks v. Vasquez,* 974 F.2d 1099, 1105 (9th Cir.1992). Here, petitioner reinitiated the conversation. (1RT 120:19–173:28). The petitioner's interviews were recorded, and now have been transcribed; however, there is no tape or transcript of petitioner's request for counsel or waiver of the request, or the conversation between the two taped interviews. Interview tape 114850, at page 48, has a brief (after the fact) statement by petitioner that he requested to be reinterviewed after asking for a lawyer and more (after the fact) statements that his confession was given freely and voluntarily.

 A voluntary statement is one that is the product of a rational intellect and free will. *Blackburn v. Alabama,* 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960). "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Derrick v. Peterson,* 924 F.2d 813, 817–18

(9th Cir.1990) (quoting *United States v. Leon Guerrero,* 847 F.2d 1363, 1366 (9th Cir.1988) (citing *Haynes v. Washington,* 373 U.S. 503, 513–14, 83 S.Ct. 1336, 1342–44, 10 L.Ed.2d 513 (1963)). "[A] confession is only involuntary ... if the police use coercive activity to undermine the suspect's ability to exercise his free will." *Derrick v. Peterson,* 924 F.2d at 818; *See also United States v. Kelley,* 953 F.2d 562 (9th Cir.1992).

Of particular instruction is the Ninth Circuit opinion in *Kelley.* There, the arrestee Kelley was given the *Miranda* warnings twice before he signed a *Miranda* waiver and was interrogated. During the interrogation, Kelley told the agents he was a heroin addict and would soon be sick from heroin withdrawal. Kelley requested, and was given, coffee with extra sugar to delay withdrawal symptoms. Approximately two-thirds of the way through the interrogation, which lasted for eighty minutes, Kelley experienced cold chills, sweats, shakes, and trembling hands. He was given additional coffee with extra sugar so that the interrogation could continue. In finding the confession to be voluntary, the Ninth Circuit noted that Kelley "remained coherent and responsive," was aware of what was going on, and told the agents that he was able to continue with questioning. *Id.*

Here, petitioner stated affirmatively that he understood his rights. (1RT 97:12–98:25). He consented to the search of his apartment and vehicle (1RT 96:10–12, 134:3–7), which he is not challenging. The transcripts do not show any coercion based on the length of the detention or interrogation. *Derrick v. Peterson,* 924 F.2d at 819. The petitioner was coherent throughout the interrogation, was responsive to the questions asked, was capable of recalling specific details of the crime, and offered to take the police to find the components of the murder weapon. The petitioner never indicated that he was unable to continue with the interrogation. Officers Crocker and Birrer testified, moreover, that petitioner was not threatened.

■ Transgressions of *Miranda* are relevant on the issue of the voluntariness of a confession. *Clewis v. Texas,* 386 U.S. 707, 709, 87 S.Ct. 1338, 1339, 18 L.Ed.2d 423 (1967). Here, even petitioner does not claim his waiver of the *Miranda* warning, and signing of the relinquishment or waiver of his request for an attorney, was not voluntary. This is another factor adding to the inescapable conclusion the confession was voluntary.

■ "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart,* 474 U.S. at 59, 106 S.Ct. at 371. Here, a defense to the introduction into evidence at trial of petitioner's confession on the ground it was not voluntary would not have been successful at trial. Trial counsel, thus, was not ineffective for failing to urge petitioner to defend on this ground. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2065–67; *James v. Borg,* 24 F.3d 20, 26 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994). The confession, moreover, certainly would have been one of the evidentiary factors trial counsel considered in advising petitioner to enter into a plea bargain. There is no merit to petitioner's claim of ineffective assistance of counsel.

### RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

DATE: April 8, 1996.

### JUDGMENT

BAIRD, District Judge.

Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of the United States Magistrate Judge,

IT IS ADJUDGED that the Petition for Writ of Habeas Corpus is denied and the action is dismissed with prejudice.