USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2315 ARTHUR SMULLEN, Petitioner-Appellant, v. UNITED STATES OF AMERICA, Respondent-Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Anthony M. Fredella with whom Fredella & Wheeler was on brief for ___________________ __________________ appellant. Jeanne M. Kempthorne, Assistant United States Attorney, with whom ____________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________ ____________________ August 30, 1996 ____________________ CAMPBELL, Senior Circuit Judge. The principal _____________________ issue is whether a criminal defendant, who is in custody, may under 28 U.S.C. 2255 collaterally challenge the restitution order imposed as a part of his sentence. Following the only two circuits to have explicitly addressed this matter, we hold he may not.  Petitioner-appellant Arthur J. Smullen was convicted following a jury trial in the United States District Court for the District of Massachusetts on three counts of making false statements to a federal agency in violation of 18 U.S.C. 1001. On May 27, 1993, Smullen was sentenced to 27 months in prison, 36 months of supervised release, restitution in the amount of $121,377.78, and a special assessment of $150. Smullen never filed a direct appeal from his conviction and sentence. On November 30, 1994, Smullen, pro se, filed a motion, pursuant to 28 U.S.C. ______ 2255, to vacate, set aside, or correct his sentence.1 The motion was denied by the district court, and Smullen now appeals. We affirm.  ____________________ 1. Smullen has completed his term of imprisonment. Because Smullen was imprisoned when he filed this 2255 motion, jurisdiction to consider the motion attached. See Fernos- ___ _______ Lopez v. Figarella Lopez, 929 F.2d 20, 23 (1st Cir. 1991) _____ ________________ (holding that the "custody" requirement of 28 U.S.C. 2255 is determined as of the date a habeas petition is filed), cert. denied, 502 U.S. 886 (1992); United States v. Michaud, _____________ _____________ _______ 901 F.2d 5, 6 (1st Cir. 1990). -2- I. I. The following facts are taken largely from the Presentence Investigation Report ("PSR") submitted to the district court by the probation department. Smullen was employed by the United States Post Office until 1974, when he left on total disability. At that time, Smullen began receiving disability payments from the United States Department of Labor. Beginning in May 1982, Smullen began to work full time at the New England Dragway in Epping, New Hampshire. Smullen worked at the Dragway until his employment was terminated in 1988. Smullen then began preparations to open a motorcycle parts and service shop, Performance Cycles, Inc., which he opened in January 1989. Throughout the period between May 1982 and February 1990, during which Smullen was employed or self-employed for all but a brief period, Smullen filed annual reports with the United States Department of Labor - Office of Workers' Compensation Programs falsely stating that he had not been employed or self-employed in the preceding 15-month period. As a result, Smullen obtained disability payments to which he was not entitled. Smullen was charged with making false statements to a federal agency in violation of 18 U.S.C. 1001. The three- count indictment alleged that Smullen had filed fraudulent statements with the Department of Labor on form CA-1032 in -3- 1988, 1989, and 1990. A jury convicted Smullen on all three counts. At sentencing, the district court ordered Smullen to pay $121,377.78 in restitution -- an amount recommended by defense counsel.2 The PSR recommended an offense level of 15; however, the district court ordered an additional two- level enhancement for obstruction of justice, finding that Smullen's trial testimony was "thorough-going perjury." Smullen's sentencing range was then set at 24 to 30 months. The district court imposed a sentence of 27 months in prison and 36 months of supervised release. Although Smullen did not appeal from his conviction or sentence, he later filed a motion under 28 U.S.C. 2255 seeking relief from his sentence. The district court denied this motion, and Smullen appeals.  II. II. Smullen argued in his 2255 motion, and now argues on appeal, that errors occurred in his sentence because he was denied his Sixth Amendment right to the effective assistance of counsel. Smullen contends that: (1) counsel erred in not arguing for a two-level reduction in offense level for acceptance of responsibility; (2) counsel erred in  ____________________ 2. The probation department suggested $168,076 as an appropriate restitution amount; the government suggested $147,935.43 in restitution; Smullen's counsel suggested that the proper restitution figure was $121,377.78. -4- agreeing to an allegedly excessive loss amount, resulting in an improper Guideline sentencing range; and (3) counsel erred in suggesting a restitution amount approximately $100,000 in excess of the maximum amount which could be ordered by law. Only the third point appears to have any substance, but, as it is beyond the purview of a collateral proceeding brought under 28 U.S.C. 2255, we cannot resolve it. Smullen's failure to have raised the above claims on direct appeal from his sentence would normally have barred him from raising them in a 2255 collateral attack unless he could show cause for the failure and actual prejudice. See ___ Coleman v. Thompson, 501 U.S. 722, 750 (1991); United States _______ ________ _____________ v. Frady, 456 U.S. 152, 165-67 (1982). However, cause and _____ prejudice need not be shown when the underlying claim alleges ineffective assistance of counsel. See Knight v. United ___ ______ ______ States, 37 F.3d 769, 774 (1st Cir. 1994).3 Smullen not only ______ argues that his counsel performed inadequately during his sentencing hearing, but also that an appeal relative to these errors was not taken because of his counsel's allegedly incompetent advice that "an appeal was just a waste of time."  ____________________ 3. Similarly, because the purported sentencing errors allegedly arose from ineffective assistance, thus giving them a constitutional dimension, they may be considered under 28 U.S.C. 2255 even though errors in the application of the sentencing guidelines, by themselves, are not normally cognizable on collateral attack. See Knight, 37 F.3d at 772. ___ ______ -5- The standard for constitutionally ineffective assistance of counsel was set forth in Strickland v. __________ Washington, 466 U.S. 668, 687 (1984). To succeed, Smullen __________ has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See ___ Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994), cert. denied, ______ ______ ____________ 115 S. Ct. 940 (1995); Lopez-Nieves v. United States, 917 ____________ ______________ F.2d 645, 648 (1st Cir. 1990) (citing Strickland, 466 U.S. at __________ 687). In order to satisfy the first prong of the Strickland __________ test, Smullen must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. __________ at 687. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  ___ The first two of Smullen's sentencing claims must be dismissed as Smullen cannot meet either prong of the Strickland test. We cannot attribute error to counsel for __________ failing to seek an offense level reduction based on acceptance of responsibility. See U.S.S.G. 3E1.1. As the ___ record shows, Smullen never accepted responsibility for his crimes. Smullen pleaded not guilty to each of the counts and maintained his innocence throughout the trial. See United ___ ______ -6- States v. Bennett, 37 F.3d 687, 697 (1st Cir. 1994) (holding ______ _______ that U.S.S.G. 3E1.1 is generally not intended to apply to a defendant who challenges the essential factual elements of guilt). Moreover, the district court stated that the defendant's trial testimony was "thorough-going perjury" and imposed a sentence enhancement for obstruction of justice. See United States v. Talladino, 38 F.3d 1255, 1265 (1st Cir. ___ _____________ _________ 1994) ("[I]n the universe of cases where obstruction of justice looms, a reduction for acceptance of responsibility is ordinarily forestalled altogether.").  Smullen has provided no better support for his contention that, had his counsel served him competently, the court would have found a lower offense level and, therefore, he would have been sentenced within a lower Guideline sentencing range. Smullen argues that the loss amount attributed to him as relevant conduct for sentencing purposes was excessive, and faults his lawyer for not bringing this fact to the court's attention. However, the amount of loss attributed to the petitioner's misconduct related to a period well within the duration of "relevant conduct" for purposes of the Sentencing Guidelines. See U.S.S.G. 1B1.3(a)(2) ___ (requiring that relevant conduct be "part of the same course of conduct or common scheme or plan as the offense of conviction"). Over an eight-year period, Smullen engaged in a course of conduct to fraudulently obtain unentitled -7- disability benefits. Smullen's counsel made no error, let alone a constitutionally relevant one, in failing to argue for a lower loss amount. As it was, defense counsel argued for a loss amount significantly lower than that proposed by the government or by the probation department. Smullen's third and only substantial claim is that the ineffective assistance of his counsel contributed to an order for him to pay an amount of restitution in excess of that permitted by law. See United States v. Ratliff, 999 ___ _____________ _______ F.2d 1023, 1026 (6th Cir. 1993) ("A refusal to appeal an erroneous restitution award, which award would have been subject to reversal on appeal, would meet the Strickland test __________ and would clearly constitute cause for [the] failure to appeal the award.") If Smullen's restitution obligation exceeds the maximum amount which the law permits, there may be a reasonable probability that counsel's failure to point this out contributed to the unfavorable outcome. Id.  ___ It may be, but we need not decide, that Smullen's restitution obligation did, in fact, exceed the maximum permitted by law, notwithstanding the basic equities that appear to have prompted it. The Supreme Court has limited restitution to losses caused by the specific conduct that is the basis of the offense of conviction. Hughey v. United ______ ______ States, 495 U.S. 411, 420 (1990) (holding that "the loss ______ caused by the conduct underlying the offense of conviction -8- establishes the outer limits of a restitution order").4 Smullen was ordered to repay $121,377.78 in connection with his guilty verdict on three counts relating to false statements submitted to the Department of Labor in 1988, 1989, and 1990. The $121,377.78 figure represents the entire amount of loss relating to Smullen's false statements to the Department of Labor over the eight-year duration of his fraudulent scheme. The loss related to the three-year period for which the government actually secured convictions was approximately $20,250.93.5   ____________________ 4. In Hughey, the defendant, charged in several counts with ______ the use of stolen credit cards, pled guilty to the fraudulent use of one. The order for restitution included use of others. The Supreme Court reversed, saying the outer limit for restitution awards was "the loss caused by the conduct underlying the offense of conviction." Hughey, 495 U.S. at ______ 420. The statute authorizing restitution, the Victim and Witness Protection Act of 1982, specifically 18 U.S.C.  3663, was amended in 1990 to allow broad restitution for offenses involving "as an element a scheme, a conspiracy, or a pattern of criminal activity." Crime Control Act of 1990, Pub. L. No. 101-647, 2509, 104 Stat. 4789, 4863. That amendment does not apply here, however, because Smullen's offense of conviction, filing false statements to a federal agency in violation of 18 U.S.C. 1001, did not include a plan, scheme or conspiracy as an element of the offense. See ___ United States v. Neal, 36 F.3d 1190, 1201 (1st Cir. 1994) _____________ ____ (holding that a defendant convicted of money laundering and of being an accessory after the fact could not be ordered to pay restitution for losses not directly related to those offenses because neither involved proof of a scheme, conspiracy or pattern of criminal activity as an element), petitionfor cert. filed, (U.S. July 25, 1996) (No. 96-5380).  _______________________ 5. The $20,250.93 figure is the amount put forward by petitioner. The government does not put forward a specific calculation of the amount of loss specifically attributable to Smullen's false statements made in 1988, 1989, and 1990. -9- As noted, this might be attributed to the ineffective assistance of counsel where, as here, counsel not only did not point out the relevant law to the district judge, but apparently agreed with the prosecution's erroneous interpretation. See Scarpa, 38 F.3d at 11 ("Serious errors ___ ______ in an attorney's performance, unrelated to tactical choices or to some plausible strategic aim, constitute substandard performance.").6 However, even assuming this is so, we are powerless in a proceeding under 28 U.S.C. 2255 to grant relief to Smullen. Section 2255 provides: A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon ____________________________________ the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. 28 U.S.C. 2255 (emphasis supplied). The plain language of the statute indicates that 2255 is available to petitioners  ____________________ 6. The government's attempt to avoid a finding of ineffective assistance by arguing that Smullen's counsel may have been acting strategically need not be addressed. Cf. ___ United States v. McGill, 11 F.3d 223, 227-28 (1st Cir. 1993) ______________ ______ (holding that a strategic choice on the part of counsel will not be second guessed by the courts); United States v. ______________ Tabares, 951 F.2d 405, 409 (1st Cir. 1991). There is little _______ in the record to suggest that counsel was aware of Hughey and ______ its progeny, but nonetheless decided not to bring this doctrine to the court's attention for strategic reasons.  -10- "in custody" who "claim[] the right to be released" from custody. Smullen, while in custody at the time he moved under 2255, was not "claiming the right to be released" but was merely claiming the right to a reduced restitution order establishing the monetary restitution he should pay. This court has previously held that a petitioner, no longer in custody, subject only to a fine cannot challenge that obligation in a 2255 action. United States v. Michaud, 901 _____________ _______ F.2d 5, 7 (1st Cir. 1990) ("A monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement for 2255 purposes[;] [n]or does potential future incarceration for failure to pay such a fine provide the requisite subject matter jurisdiction.").  The Fifth and Sixth Circuits have held, in cases analogous to the present, that a person in custody cannot bring an ineffective assistance of counsel claim challenging a fine because that person is not "claiming a right to release" from custody. See United States v. Segler, 37 F.3d ___ _____________ ______ 1131, 1137 (5th Cir. 1994) ("[I]f counsel's constitutionally insufficient assistance affected the trial court's guilt determination or the sentencer's imposition of a prison term, a prisoner's ineffective assistance of counsel claim falls within the scope of 2255; if, as here, it relates only to the imposition of a fine, his claim falls outside 2255."); United States v. Watroba, 56 F.3d 28, 29 (6th Cir.), cert. ______________ _______ _____ -11- denied, 116 S. Ct. 269 (1995); accord United States v. ______ ______ _____________ Gaudet, 81 F.3d 585, 592 (5th Cir. 1996). We are not aware ______ of any court of appeals that, having addressed this issue, has reached a contrary result.7 The Fifth and Sixth Circuits' interpretation of  2255 not only tracks the literal language of the statute but also promotes the equal treatment of similar claims. A defendant, not in custody, sentenced to an allegedly erroneous fine or restitution order because of ineffective assistance of counsel cannot seek relief under 2255, see ___ Michaud, 901 F.2d at 7, and therefore, it seems congruent _______ that a petitioner who is given the same allegedly erroneous fine or restitution order but also happens, at the time he petitions, to be rightfully imprisoned also should not be able to challenge his monetary obligation in a collateral attack.  ____________________ 7. This Circuit has not authoritatively addressed the question decided by Segler and Watroba -- whether or not  ______ _______ 2255 is a proper avenue for a person in custody to assert an ineffective assistance of counsel claim relating to the imposition of a fine or restitution order. In several unpublished opinions lacking in precedential force, we have implied that a restitution order can be addressed in 2255 proceedings. See, e.g., Vela-Fossas v. United States, 1990 ___ ____ ___________ _____________ WL 443937 (1st Cir. Sept. 7, 1990). In addition, we have assumed without deciding that there was jurisdiction to challenge a restitution order under the former Fed. R. Crim. P. 35 (which permitted the court to correct an "illegal sentence" at any time). See United States v. Lilly, 80 F.3d ___ _____________ _____ 24, 28 (1st Cir. 1996).  -12- Agreeing with the Fifth and Sixth Circuits' analyses, we hold that Smullen cannot challenge his restitution obligation in this 2255 proceeding.8  Affirmed. Affirmed ________  ____________________ 8. Should Smullen become incarcerated in the future due to his failure to meet the restitution order as the basis for his confinement obligations, he may, although we need not decide for present purposes, be entitled to bring a 2255 action challenging his restitution at that point. -13-