**Angel L. COSME–TORRES, Petitioner**

v.

**UNITED STATES of America, Respondent.**

**Civil No. 12–1553 (DRD).**

United States District Court, D. Puerto Rico.

Signed June 26, 2013.

Angel L. Cosme–Torres, White Deer, PA, pro se.

Myriam Y. Fernandez–Gonzalez, Nelson J. Perez–Sosa, U.S. Attorney's Office, San Juan, PR, for Respondent.

### OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

On May 27, 2008, Petitioner Angel L. Cosme–Torres ("Cosme") was indicted along with one hundred and ten other individuals. Cosme was charged with conspiring to distribute controlled substances; possession with intent to distribute heroin, cocaine base, cocaine, marijuana; and a criminal forfeiture count (08–cr–204, Docket No. 3). Pending before the Court is Petitioner's writ of habeas corpus under 28 U.S.C. § 2255 filed on July 10, 2012 (Docket No. 3) on the basis of ineffective assistance of counsel purportedly by two attorneys.

### I. Procedural History

Cosme pled not guilty to the charges on June 20, 2008 (08–cr–204, Docket No. 436). On August 13, 2008, a status conference was held for those co-defendants described as runners in the indictment, such as Cosme (08–cr–204, Docket No. 705). Therein, the United States announced that plea offers had been made to all defendants and the United States set a deadline of October 1, 2008 to accept the offer. Cosme's attorney, Jose R. Gaztambide, was present at this conference.

On October 31, 2008, Attorney Gaztambide requested a forty-five day extension of time to execute a plea agreement, conditioned upon Cosme's consent (08–cr–204, Docket No. 903). On November 5, 2008, the Court noted this motion and extended the deadline to file a change of plea motion, for all defendants, to December 1, 2008 (08–cr–204, Docket No. 906). The deadline was extended three more times to February 5, 2009 (08–cr–204, Docket No. 1007), March 23, 2009 (08–cr–204, Docket No. 1112) and March 31, 2009 (08–cr–204, Docket No. 1207). On the date of the final deadline, March 31, 2009, Cosme filed a motion for a change of plea (08–cr–204, Docket No. 1293). The motion states that Cosme "is entering into this plea after receiving a plea agreement and after dis-

cussing the agreement, the guidelines and the evidence received from the government in the case before the court." *Id.* The plea agreement called for 108 months of imprisonment and a Criminal History Category of I or II (Docket No. 7, page 9).

A plea hearing was held on April 24, 2009 before U.S. Magistrate Judge Camille L. Velez–Rive (08–cr–204, Docket No. 1535). At the hearing, Attorney Gaztambide stated "that defendant has decided to go to trial, that defendant feels that the offer made is too long for the role he had, and that there's a mistake as to the role stated in the proposed agreement.... The Court inquired whether defendant understood the proceedings taking place and he replied in the affirmative." *Id.* As a result, the United States withdrew its offer. Cosme's trial was reset for May 8, 2009 (08–cr–204, Docket No. 1618).

On May 6, 2009, the United States filed an Information pursuant to 21 U.S.C. § 851(a)̈seeking an enhanced penalty upon Cosme's conviction (08–cr–204, Docket No. 1658). This Information served to potentially double the mandatory minimum sentence from ten years to twenty years. Two days later, on May 8, 2009, the United States withdrew the Information without prejudice (08–cr–204, Docket Nos. 1682 and 1685).

On May 8, 2009, the United States offered a straight plea to Cosme and three other defendants also included in the Information. Cosme's trial was reset for

May 12, 2009 (08–cr–204, Docket No. 1682). On May 11, 2009, Cosme, along with three other defendants, entered a straight guilty and thereby pled guilty to all counts.

In an effort to streamline Cosme's sentencing, the Court ordered that the United States provide an individualized assessment of each defendant's, including Cosme's, foreseeable drug quantity (08–cr–204, Docket No. 2219).

On September 17, 2009, and again on October 21, 2009, Cosme moved *pro se* to withdraw his guilty plea (08–cr–204, Docket Nos. 2297 and 2423). His first motion was on the grounds of ineffective assistance of Attorney Gaztambide.[1]

On November 9, 2009, the Court held a hearing on Cosme's motions to withdraw his guilty plea (08–cr–204, Docket No. 2535) and found that these motions were insufficient as a matter of law. The Court also appointed new counsel, which turned out to be Attorney Jorge E. Vega Pacheco.

On July 28, 2010, Petitioner filed a motion to rescind his previous motion to withdraw his guilty plea (08–cr–204, Docket No. 4047).[2] The following day, the Court granted Petitioner's (08–cr–204, Docket No. 4058).

On July 30, 2010, Petitioner was sentenced to 121 months imprisonment, to be served concurrently, on all counts (08–cr–204, Docket Nos. 4071, 4072).[3]

---

1. Attorney Gaztambide responded to this motion, and a related motion, on October 11, 2009 (08–cr–204, Docket No. 2393). Therein, Attorney Gaztambide notes that Cosme rejected the United States' plea offer of April 24, 2009. Attorney Gaztambide also mentions that two conferences were held with the eleven defendants, and their attorneys, who were scheduled to proceed to trial first. At the conferences, the attorneys discussed the consequences of a straight plea as well as recent case law. Additionally, Attorney Gaztambide

notes that he met with Cosme over 21 times at the Metropolitan Detention Center Guaynabo and at least another five times in court.

2. By July of 2010, none of the co-defendants had proceeded to trial and everyone who had decided to plea guilty had filed a change of plea motion.

3. Upon a motion by Petitioner, the Court reduced Petitioner's sentence to 120 months on

Attorney Vega Pacheco, on behalf of Petitioner, filed a notice of appeal on August 6, 2010 (08–cr–204, Docket No. 4099). On July 12, 2011, the appeal was voluntarily dismissed upon an unopposed motion by Petitioner pursuant to Fed. R.App. P. 42(b).

On July 10, 2012, Petitioner filed the instant complaint (Docket No. 3) with this Court alleging ineffective assistance of counsel of Attorneys Gaztambide and Vega Pacheco. Petitioner avers that Attorney Gaztambide failed to communicate a global plea offer that was available to Petitioner. Petitioner asserts that Attorney Gaztambide was aware of a plea offer and told Petitioner that no such offer was available; further, Petitioner alleges that Attorney Gaztambide advised him that the best he could do was to enter into a straight plea without the benefit of a plea agreement.

Petitioner argues that Attorney Vega Pacheco was ineffective for failing to communication a plea offer and failing to move to withdraw his plea. Petitioner states:

Jorge E. Vega Pacheco was ineffective when instructed by Petitioner to inquire if a plea offer existed as the one all his co-defendants got. Defense counsel informed Petitioner that no plea offer existed for anyone, and that the "straight up plea" was the his best option. When Petitioner showed defense counsel copies of his codefendant's plea offers, counsel got defensive and states that it was too late and [that] he could not withdraw the change of plea. At sentencing, defense counsel informed Petitioner that there was an early plea offer made that [had] now expired.

(Docket No. 3, page 4). Additionally, Petitioner posits that Attorney Vega Pacheco failed to file an appeal at Petitioner's direct request.

March 19, 2012 (08–cr–204, Docket No. 4454)

On August 27, 2012, the Government opposed Petitioner's § 2255 motion (Docket No. 7). First, regarding the purported failure to request withdrawal of the guilty plea, the Government argues that Petitioner made a knowing and voluntary withdrawal of his request to withdraw his guilty plea as evidenced by the Sentencing Hearing transcript (08–cr–204, Docket No. 4314). Second, the Government reviews the relevant case history as to the withdrawal of the plea. The Government states that on April 18, 2009, the prosecutor relayed the proposed plea agreement to Attorney Gaztambide proposing a sentencing recommendation of 108 months. However, Petitioner rejected the offer on April 24, 2009, and elected to go to trial. The Government then withdrew the offer. Petitioner replied in the affirmative when the Court inquired as to whether he understood the proceedings taking place. Petitioner subsequently entered a straight plea. Petitioner then requested the withdrawal of the straight plea premised on ineffective assistance of counsel.

In response, Attorney Gaztambide provided the Court with a detailed filing enumerating the multitude of meetings he had with Petitioner and meetings Petitioner had with counsel of other co-defendants who explained the risks by electing to go to trial. During a conference in the District Courtroom in Hato Rey, members of the Federal Bar explained to all defendants the risks of going to trial (08–cr–204, Docket No. 2393, page 2). Afterwards, Attorney Gaztambide personally spoke with the Petitioner.

On May 11, 2009, additional members of the bar explained to Petitioner the enhancement filed by the United States and the consequences of a straight plea (08–cr–204, Docket No. 2393, page 2). Attorney

pursuant to 18 U.S.C. § 3582(c)(2).

Gaztambide, again, consulted with Petitioner about the straight plea and sentencing. Then, later that afternoon, Petitioner entered his straight plea after the Court made sure he understood the consequences of his actions (08–cr–204, Docket No. 2393, page 2) (for more detail *see infra* p. 52 n. 8).

Under these facts, the Government concludes that Petitioner cannot satisfy the requisite legal standard for ineffective assistance of counsel. Finally, the Government notes that Attorney Vega Pacheco did timely file a notice of appeal a mere three days after the District Court entered *Judgment.*

On September 24, 2012, Petitioner replied to the Government's opposition brief (Docket No. 12). Petitioner again states that Attorneys Gaztambide never presented him with a written plea agreement of 108 months. Petitioner also argues that there must have a previous plea offer since the 108 months offer was called the final agreement. Petitioner further disagrees with the representations made by Attorney Gaztambide. Petitioner additionally argues that counsel's failure to present him with the formal plea offer renders ineffective assistance of counsel and triggers the need for an evidentiary hearing.

On August 28, 2012, the Court directed the Clerk of the Court to refer the instant matter to Magistrate Judge Justo Arenas for his *Report and Recommendation* (Docket No. 9).

On October 25, 2012, Magistrate Judge Arenas submitted a *Report and Recommendation* to the Court (Docket No. 12). The Magistrate noted that at sentencing, the Court asked Petitioner if he was rescinding his motion to withdraw plea and whether he was reverting to his status of having made a straight plea. Petitioner answered yes to both questions without

coercion and with knowledge of the consequences.

Magistrate Judge Arenas also noted that the prosecutor stated that Petitioner handled 50 grams of crack cocaine on any given day during the three years he was a member of the drug conspiracy and, accordingly, requested a sentence in the range of 292 to 365 months based on a total offense level of 40, considering that it was reasonably foreseeable for Petitioner to be involved in the distribution of a total of 54 kilograms of crack cocaine. "After discussion between the attorneys, and petitioner with defense counsel, petitioner agreed, for purposes of sentencing, that he possessed 50 grams of cocaine base, which would place him at a base offense level of 30, which ultimately provided for a sentencing range of 97 to 121 months. Petitioner was aware that the court could not go below the statutory minimum of 120 months. The prosecutor reminded the court that the sentence could not be lower because of a prior conviction. Petitioner accepted this proposal." (Docket No. 12, page 62, citations omitted). Thus, the Magistrate concluded that "[e]ven without a formal plea agreement, defense counsel and the prosecution clearly agreed upon an accountability for an amount of crack cocaine which greatly favored petitioner under the Sentencing Guidelines, this after the government had announced that it was ready to proceed with a hearing to show that petitioner was accountable for much more cocaine base." (Docket No. 12, page 63).

The Magistrate Judge further noted that at the change of plea hearing held on May 11, 2009, Petitioner stated that he had met with Attorney Gaztambide, approximately about fifteen times and met with Attorney Gaztambide five times with regard to entering a plea.

The Magistrate Judge also determined that the first formal offer of 108 months was made in writing and was rejected by Petitioner in Court on April 24, 2009. Additionally, Magistrate Judge Arenas stated that Petitioner "ignores the fact that he was offered an extremely favorable agreement of 108 months imprisonment which he rejected." (Docket No. 12, page 64). The Magistrate termed the agreement extremely favorable:

consider[ing] that the prosecution could have filed an Information providing for an enhanced penalty upon conviction and had not done so by the date that the first change of plea hearing was held. Furthermore, petitioner was then held accountable for a drug quantity below that reflected in the indictment.

(Docket No. 12, page 64, footnote 10). Magistrate Judge Arneas also concluded that this offer was "[c]learly the first and last formal plea agreement as reflected by subsequent negotiations between defense counsel and the prosecution" notwithstanding that this agreement was called the "final" agreement. (Docket No. 63, page 21). Finally, the Magistrate Judge notes that it is incorrect that all other defendants received plea offers of six to seven years.

Hence, Magistrate Judge Arneas ascertained that Petitioner failed to demonstrate that Attorney Vega Pacheco and Attorneys Gaztambide were ineffective and thus recommended that Petitioner's

§ 2255 motion be denied without an evidentiary hearing.

On November 26, 2012, Petitioner submitted his objections to the *Report and Recommendation* (Docket No. 13).[4] Petitioner objects to the Magistrate's rendition of the factual and procedural background. Petitioner states that the Magistrate Judge erred in finding that Attorney Vega Pacheco filed a notice of appeal; instead, Petitioner claims that he filed it *pro se* as Attorney Vega Pacheco failed to do so. In regard to Attorney Gaztambide, Petitioner states that he rejected an plea offer of 108 months, because it was made orally and never made in writing. Petitioner asserts that a previous plea agreement did exist and that the plea agreement was not communicated to Petitioner by Attorney Gaztambide. Further, Petitioner avers that he instructed Attorney Gaztambide to find and confirm the written plea offer of six to seven years which his co-defendants had been offered. Petitioner finally argues that the Magistrate Judge erred in finding that the 108 month plea offer was the first plea offered when there is evidence that some of Petitioner's equally culpable and charged co-defendants entered into a plea for six to seven years.

The Government has not opposed the Magistrate Judge's *Report and Recommendation.*

On June 13, 2013, the Court held an Evidentiary Hearing (Docket No. 21).[5]

---

**4.** Although Petitioner's objections to the Magistrate's *Report and Recommendation* were filed slightly tardy, the Court will consider Petitioner's objections as timely in order to squarely adjudicate the matter on the merits.

**5.** On June 18, 2013, following the Evidentiary Hearing, Petitioner request, in the Spanish language, that the Court appoint him counsel (Docket No. 20). As this request is in Spanish, the Court hereby **STRIKES** this entry from the docket. *See* Local Rule 5(g); the

Puerto Rican Federal Relations Act, 48 U.S.C. § 864 (mandating that [a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language); *Gonzalez–De–Blasini v. Family Dept.*, 377 F.3d 81, 89 (1st Cir.2004) (holding that the district court should not have considered any documents before it that were in the Spanish language); *Frederique–Alexandre v. Dept. of Natl. & Evtl. Res.*, 478 F.3d 433 (1st Cir.2007) (refusing to consider documents submitted in

## II. Referring Dispositive Motions to a U.S. Magistrate Judge

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico; *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate Judge's Report and Recommendation by filing its objections within fourteen (14) days after being served a copy thereof. *See* Local Rule 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (2009), in pertinent part, provides that:

> [w]ithin fourteen days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

(emphasis added).

■ "Absent objection ... [a] district court has a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft · Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992); *see also Sands v. Ridefilm Corp.*, 212 F.3d 657, 663 (1st Cir.2000); *see also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151. (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *see also Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir.1988); *see also Borden v. Secretary of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a de novo review of an argument never raised"); *see also United States v. Valencia*, 792 F.2d 4, 6 (1st Cir.1986); *see also Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980).

■ In the instant case, Petitioner has filed several objections to the Magistrate Judge's *Report and Recommendation* (Docket Nos. 17). Thus, the Court reviews the portions of the *Report and Recommendation* to which objections were made *de novo* and reviews all other unobjected-to portions only for plain error.

## III. Analysis

■ We first examine Petitioner's objections to the Magistrate's *Report and*

Spanish without accompanying English translations); *Aguiar–Carrasquillo v. Agosto–Alicea*, 445 F.3d 19 (1st Cir.2006) (noting that the First Circuit shall not consider materials not submitted in English); *United States v. Morales–Madera*, 352 F.3d 1 (1st Cir.2003) (holding that English translation of testimony given in Spanish should be the evidence entered into the record); *United States v. Rivera–Rosario*, 300 F.3d 1 (1st Cir.2002) (finding that district courts reliance on evidence presented in Spanish at trial was reversible error and reminding the court of its duty to ensure that all proceedings and filings be translated).

*Recommendation,* which, as stated above, we review *de novo;* as to any unopposed portions, this Court needs only ascertain that there is no "plain error" as to the Magistrate Judge's conclusions, in order to adopt the same. After a careful analysis, the Court agrees fully with Magistrate Judge Arenas' determination that Petitioner can not demonstrate that his counsel's performance, either Attorney Gaztambide's performance or Attorney Vega Pacheco's performance, fell below an objective standard of reasonableness; nor can Petitioner demonstrate that but for counsel's alleged errors, Petitioner would have elected to wait for a better plea agreement or proceeded to trial. Thus, Petitioner fails to satisfy the applicable *Strickland* test. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[6] Succinctly, the Court agrees with the Magistrate Judge's conclusions upon a de *novo* review as to the objected-to portions of the *Report and Recommendation* and finds no "plain error" as to any unobjected-to portions. Accordingly, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference the Magistrate's *Report and Recommendation* (Docket No. 12) to the instant *Opinion and Order.* The Court briefly explains below.

The Court begins by resolving two factual matters: first, the plea agreement offering 108 months was indeed written (Docket No. 7-2). The agreement was emailed from the U.S. Attorneys' Office to Attorney Gaztambide (Docket No. 7-1). Second, it was Attorney Vega Pacheco, and not Petitioner, who filed a notice of appeal on August 6, 2010.[7]

Next, the Court notes that Petitioner, represented by Attorney Gaztambide at the time, stated in open court before the undersigned on May 11, 2009, that he was satisfied with Attorney Gaztambide's services, representation and advice and that he had consulted with Attorney Gaztambide to the case in general to Petitioner's satisfaction (08–cr–204, Docket No. 3979, page 7). Petitioner also stated in open court that he met with Attorney Gaztambide approximately fifteen times to discuss the case and that Petitioner was satisfied that he had sufficient time to make an intelligent decision regarding making a plea.[8] (08–cr–204, Docket No. 3979, page 8).

---

6. Under the *Strickland* test, Petitioner has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052); *see Argencourt v. United States,* 78 F.3d 14, 16 (1st Cir.1996); *Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994); *Lema v. United States,* 987 F.2d 48, 51 (1st Cir.1993); *Lopez–Nieves v. United States,* 917 F.2d 645, 648 (1st Cir.1990) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). There is no doubt that *Strickland* also applies to representation outside of the trial setting, which would include plea bargains, sentence and appeal. *See Missouri v. Frye,* — U.S. —, 132 S.Ct. 1399, 1408–10, 182 L.Ed.2d 379 (2012); *Lafler v. Cooper,* — U.S. —, 132 S.Ct. 1376, 182

L.Ed.2d 398 (2012); *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Bonneau v. United States,* 961 F.2d 17, 20–22 (1st Cir.1992); *United States v. Tajeddini,* 945 F.2d 458, 468–69 (1st Cir.1991) (abrogated on other grounds by *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)); *cf. Panzardi–Alvarez v. United States,* 879 F.2d 975, 982 (1st Cir. 1989); *Lopez–Torres v. United States,* 876 F.2d 4, 5 (1st Cir.1989) (abrogated on other grounds by *Bonneau v. United States,* 961 F.2d 17 (1st Cir.1992)).

7. To reduce any doubts on this point, the Court hereby directs the Clerk of Court to send Petitioner a copy of the Notice of Appeal (08–cr–204, Docket No. 4099).

8. More specifically, the following exchange took place between the undersigned and the Petitioner during the May 11, 2009, Change of Plea Hearing:

Further, during the hearing, the Court informed Petitioner that "as to Counts 1 through 4, [he is] facing a minimum of ten years to life ...." [9] (08–cr–204, Docket No. 3979, page 32). The Court also informed Petitioner "that if the sentence is more severe than [he] expect[s], [he] will still be bound by [his] plea and [he] will have no right to withdraw it ...." (08–cr–204, Docket No. 3979, page 53). Petitioner, then proceeded to plead guilty to counts 1 through 5, and 7 (08–cr–204, Docket No. 3979, page 55).[10] Petitioner, thereby accepted that he was individually responsible for a minimum of 50 grams of cocaine base after being informed that the sentence in connection with that drug quantity was a minimum of ten years as established by the United States Sentencing Guidelines.[11]

The Court also notes that Petitioner, represented by Attorney Vega Pacheo, stated in open court before the undersigned on July 30, 2010, more than one year later, that he agreed to rescind his request to withdraw his plea and return to the status of having made a straight plea

and did so willfully, voluntarily and with knowledge of the consequences and without coercion (08–cr–204, Docket No. 4314, page 7). The Court stated to Petitioner that "[i]f [he] accept[s] 50 grams of cocaine base that triggers a statutory minimum of 10 years. [He] cannot be sentenced below 10 years unless [he] either make[s] the safety valve, which he doesn't qualify" and Petitioner acknowledged that he understood. (08–cr–204, Docket No. 4314, p. 19–20). Petitioner thus acknowledged, for a second time, that he was individually responsible for a substantive count of possession with intent to distribute 50 grams of cocaine base and as to the conspiracy to possess with intent to distribute 50 grams of cocaine base, triggering a minimum sentence of ten years as advised by the Sentencing Guidelines.

■ With these facts clarified, the Court is in complete agreement with the Magistrate Judge, upon conducting our own *de novo* review, that the 108 month plea offer was properly communicated to Petitioner and that Petitioner rejected that offer. On April 24, 2009, a change of plea

---

Q: Now, have you been furnished with a copy of the charges filed against you in the indictment?
A: Yeah.
Q: Have you discussed those charges with Mr. Gastambite?
A: Yes, sir.
Q: Have you discussed with Mr. Gastambite the consequences of making a plea today?
A: Yes, sir.
Q: All right. Are you satisfied that you have had enough time to make an intelligent decision today as to making a plea?
A: Yes, sir.
(08–cr–204, Docket No. 3979, page 8).

9. Count 3, which was read to Petitioner, is possessing with intent to distribute "50 grams or more of a mixture or substance containing a detectable amount of cocaine base, in aiding and abetting form, again, within a thousand feet of real property, public or private school

or housing facility owned by public housing authority and/or a playground." (08–cr–204, Docket No. 3979, page 24).

10. Petitioner pled guilty to a conspiracy to posses with intent to distribute 50 grams of cocaine base; a substantive count of possessing with intent to distribute in excess of 1 kilogram of heroin; a substantive count of possessing with intent to distribute in excess 50 grams of cocaine base; a substantive count of possessing with intent to distribute in excess 5 kilograms of cocaine; and a substantive count of possessing with intent to distribute in excess 100 kilograms of marijuana. (08–cr–204, Docket No. 3979, pages 23–24).

11. The Court notes that the Sentencing Guidelines are advisory as declared by the United States Supreme Court in *U.S. v. Booker*, 543 U.S. 220, 259–60, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

hearing was set to be held, but was cancelled as Petitioner had elected to go to trial and felt that the offer made was too long for the role he had in the conspiracy. Thus, Petitioner was clearly informed of the United States' plea offer and clearly rejected that offer on the record. Based on these clear assertions in open court to Magistrate Judge Velez–Rive, Petitioner may not now retract those averments when they are convenient to him. *See Lefkowitz v. Newsome,* 420 U.S. 283, 288, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975) (" 'When a criminal defendant has solemnly admitted in open court [as Petitioner eventually accepted again on July 30, 2010] that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.' ") (quoting *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *United States v. Parrilla–Tirado,* 22 F.3d 368, 373 (1st Cir.1994) ("It is the policy of the law to hold litigants to their assurances .... 'we will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so.' ") (quoting *United States v. Pellerito,* 878 F.2d 1535, 1539 (1st Cir.1989)). Petitioner was properly informed of the plea offer and rejected that plea offer in open court. There is simply no depravation of Petitioner's Sixth Amendment right to effective counsel.

Moreover, the Court is also in agreement with the Magistrate Judge that Petitioner's sentence was an extremely favorable one when one considers that Petitioner could have potentially been held responsible for a much higher drug quantity as indicated supra.

Finally, the Court finds that the instant matter does not necessitate the need to hold a further evidentiary hearing as the pending habeas corpus petition may be resolved on the documented record before the Court.[12] Furthermore, it is apparent from the briefing and the facts of pending controversy that Petitioner is not entitled to the requested relief of vacating, setting aside, or correcting his sentence under § 2255. *See United States v. LaBonte,* 70 F.3d 1396, 1412–1413 (1st Cir.1995) ("A district court may dismiss a section 2255 petition without holding an evidentiary hearing if it plainly appears on the face of the pleadings that the petitioner is not entitled to the requested relief, or if the allegations, although adequate on their face, consist of no more than conclusory prognostications and perfervid rhetoric, or if the key factual averments on which the petition depends are either inherently improbable or contradicted by established facts of record."); *see also* 28 U.S.C. § 2255 (explaining that a hearing is unnecessary when the record "conclusively shows that the prisoner is entitled to no relief").

### IV. Conclusion

For the reasons stated above, the Court reaches the same conclusion as Magistrate Judge Arenas as to the objected-to portions of the *Report and Recommendation* (Docket No. 12) upon conducting our own, independent *de novo* review; the Court also determines that the *Report and Recommendation* contains an apt and thoughtful analysis that is devoid of plain

---

**12.** The Court did hold a hearing on June 13, 2013 in which both of Petitioner's prior counsel were present. Both Attorney Gaztambide and Attorney Vega Pacheco chose not to express any further statements other than what they had previously stated on the record. The Court then determined to decide the matter based expressly on the documents already provided on the record.

error as to the remaining unobjected-to portions.[13] Consequently, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference the Magistrate's *Report and Recommendation* (Docket No. 12) to the instant *Opinion and Order.*

Petitioner's motion under 28 U.S.C. § 2255 is hereby **DENIED** without the need for a further evidentiary hearing as the Court has concluded that Petitioner does not satisfy the applicable *Strickland* test for ineffective assistance of counsel. The Court also denies a certificate of appealability in the instant matter. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

JUSTO ARENAS, United States Magistrate Judge.

### ˙ ˙ I. INTRODUCTION

Petitioner was indicted on May 27, 2008 in six counts of a seven-count indictment charging serious narcotics and weapons offenses as well as providing for forfeiture of assets. (Crim. No. 08–0204, Docket No. 3.) One hundred and ten other defendants were indicted along with him. He was charged in the first count in that he (and they) did knowingly and intentionally combine, conspire, confederate and agree together and with each other and with diverse other persons, to commit an offense against the United States, that is, to knowingly and intentionally possess with intent to distribute and distribute controlled substances, to wit: in excess of fifty grams of cocaine base, a Schedule II Narcotic Drug Controlled Substance; and/or in excess of one kilogram of heroin, a Schedule I Narcotic Drug Controlled Substance; and/or in excess of five kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance, and/or in excess of 100 kilograms of marijuana, a Schedule I Controlled Substances, within 1,000 feet of the real property comprising a public or private school and/or housing facility owned by a public housing authority and/or a playground, as prohibited by Title 21, United States Code, Section 841(a)(1) and 860. All in violation of 21 § 846. (Criminal 08–204, Docket No. 3). Counts Two through Five charged the substantive aiding and abetting offenses related to the different types of narcotics subject of the indictment, that is, heroin, cocaine, cocaine base, and marihuana. Petitioner was not charged with a weapons offense subject of Count Six. In the body of the indictment, he is described as one of fourteen defendants who played the role of runner in the drug distribution organization. (Criminal 08–204, Docket No. 3 at 18–19). Runners were directly supervised by the leaders of the organization. They provided narcotics for the sellers and were responsible for collecting the proceeds of the sales and paying the street sellers. They supervised the sellers and the daily activity at the drug distribution point. (*Id.*) There were also enforcers, facilitators and drug processors, a wholesale supplier and a gunsmith.

After initially pleading not guilty to the charges on June 20, 2008, petitioner filed a motion for change of plea on March 31, 2009. (Criminal 08–204, Docket No. 1293). Before that, on August 13, 2008, at a status conference limited to the codefendants who

---

**13.** The Court acknowledges Magistrate Judge Arenas' particularly thorough and stellar *Report and Recommendation.* Accordingly, the Court need not go further "[w]here, as here, a [Magistrate] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate." *In re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d 36, 38 (1st Cir.1993).

were described as runners in the indictment, the United States announced that plea offers had been made to all defendants in the case. (Criminal No. 08–204, Docket No. 705.) October 31, 2008 was provided as the deadline to accept the offers. Counsel for petitioner was present at this conference. On October 31, 2008, counsel for petitioner filed a motion seeking a 45–day extension to conclude review of the discovery and to execute a plea agreement if agreed to by petitioner. (Criminal No. 08–204, Docket No. 903.) Motions to extend the deadline abounded. The new date for the filing of change of plea motions was set at December 1, 2008. (Criminal No. 08–204, Docket No. 906.) By that date, no defendant had filed a motion for change of plea. That deadline was then extended to February 5, 2009. (Criminal No. 08–204, Docket No. 1007.) By then, three defendants, all sellers, had filed motions for change of plea. (Criminal No. 08–204, Docket Nos. 978) (Luis E. Gonzalez Rodriguez), 1059 (Manuel deJesus-Rios), 1085 (Roberto A. Muller–Matos.) The deadline for change of plea motions was then reset for March 23, 2009. (Criminal No. 08–204, Docket No. 1112.) By then, only another four defendants, three runner and a leader, moved to change their pleas. (Criminal No. 08–204, Docket Nos. 1154, 1169, 1185, 1192.) The United States announced that a package plea would not be offered for the group of defendants composed of runners. Finally, the deadline for change of plea motions

was set for March 31, 2009. (Criminal No. 08–204, Docket No. 1207.) On that date, fifteen defendants complied with the deadline, including eleven sellers, two enforcers, petitioner and another runner, Alfred Rivera Torres. (Criminal No. 08–204, Docket No. 1293.)

At the plea hearing held on April 24, 2009 before a U.S. magistrate judge, petitioner, unhappy with his plea agreement [1], announced that he had changed his mind and had decided to proceed to trial. (Criminal 08–204, Docket No. 1535). Petitioner felt that the offer made was too long for the role he was attributed, and that there was a mistake as to the role he played in the enterprise, as stated in the proposed agreement. The government then withdrew the offer. Petitioner was then added to the defendants who would be proceeding to trial which was set for May 4, 2009.[2] The trial in relation to twelve defendants, including petitioner, was subsequently reset for May 8, 2009. (Criminal No. 08–204, Docket No. 1618.)[3]

On May 6, 2009, the United States Attorney filed an Information in accordance with 21 U.S.C. § 851(a) seeking an enhanced penalty upon petitioner's conviction, which information served to expose petitioner to a minimum mandatory sentence of twenty years imprisonment rather than ten. See 21 U.S.C. § 841(b)(1)(A). (Criminal 08–204, Docket No. 1658). Curiously, the Information was withdrawn without prejudice by the United States on

1. The plea agreement called for 108 months of imprisonment and a Criminal History Category of I or II. (Docket No. 7 at 9).

2. Between April 1 to April 24, 2009, five defendants filed motions for change of plea. (Criminal No. 08–204, Docket Nos. 1305, 1309, 1315, 1318, 1348.) Therefore, by the time petitioner appeared in court and was definitely aware of a formal offer of 108 months imprisonment, twenty-seven defen-

dants had moved to change their not guilty pleas, including petitioner.

3. The last co-defendants entered guilty pleas by April 27, 2010 and the jury that had been selected the day before was dismissed. (Criminal No. 08–204, Docket No. 3803.) In other words, of those that were arrested, none of the 111 defendants charged proceeded to trial.

May 8, 2009. (Criminal 08–204, Docket No. 1682). On that date, the government offered a straight plea to the four defendants subject of the enhanced penalty provision Information. Those defendants were granted until May 11, 2009 to make a straight plea. On May 11, 2009, with the filing of the enhanced penalty information hanging over his head like the sword of Damocles, petitioner, along with the other three defendants, entered a straight guilty plea, that is, he pled guilty to all charges without any agreement involving the United States[4]. (Criminal 08–204, Docket No. 1702).

In order to avoid a complicated sentencing process, the court sought a finite individualization of accountability for several defendants, including petitioner, based upon foreseeability of drug quantity. *See United States v. Correy*, 570 F.3d 373, 382 (1st Cir.2009). (Criminal No. 08–204, Docket No. 2219.) Shortly before sentencing, petitioner announced on August 24, 2009 that he wished to avoid a lengthy sentencing hearing and that there would be a meeting between defense counsel and the prosecutor to that effect. (Criminal 08–204, Docket No. 2216).

On September 17 and October 21, 2009, petitioner *pro-se* moved to withdraw his guilty plea, the first motion stating that such withdrawal was due to ineffective legal assistance. (Criminal 08–204, Docket Nos. 2297, 2423). Defense counsel responded to the first motion in detail and a related one on October 11, 2009. (Criminal 08–204, Docket No. 2393). In view of the accusations in the motion to withdraw plea, counsel noted that petitioner rejected the offer of April 24, 2009. A conference

was held with eleven defendants who were scheduled to go to trial first. Members of the defense bar explained to these defendant the risk they were taking in going to trial in this case. Later, the government filed the Information under 21 U.S.C. 851(a). On May 11, 2009, the defendant was again addressed by members of the Bar, including attorneys Jose Aguayo, Maria Sandoval, and Rachel Brill. The good and bad consequences of a straight plea were discussed as well as the *Colon Solis* case which had recently been decided. Petitioner had the opportunity to discuss the matter with other attorneys as well as with co-defendants. Later in the afternoon, the four defendants previously subject of Informations entered straight pleas. The court set the motions to withdraw guilty plea for hearing on November 9, 2009. (Criminal 08–204(DRD), Docket No. 2535). After the hearing, the court made a finding that the motions to withdraw plea were insufficient as a matter of law. New counsel was then appointed to represent petitioner.

On July 28, 2010, petitioner filed a motion to withdraw the motion to withdraw guilty plea (Docket No. 2297). (Criminal 08–204, Docket No. 4047). The decision to withdraw the motion to withdraw plea was apparently made after discussion with substitute counsel regarding the transcript of the guilty plea colloquy, the law and the sentencing guidelines. Furthermore, by that time, not one of the co-defendants had proceeded to trial. In short, no trial was held and everyone that had decided to plea guilty had filed a motion for change of plea. A comprehensive sentencing memo-

---

**4.** Three other defendants, Hector L. Hernandez–Natal, James Moll–Melendez, and Christopher Figueroa–Ortiz, described as sellers in the indictment, also entered straight pleas, that is, without the benefit of a plea agreement with the United States. All four were subjects of Informations under 21 U.S.C. § 851(a) since each had a prior narcotics felony conviction. (Crim. No. 08–204, Docket Nos. 1656, 1657, 1658, 1659.) Each of these defendants was sentenced to a 120–month term of imprisonment.

randum was then filed. (Criminal 08–204, Docket No. 4048). The court granted the motion to withdraw on the following day. (Criminal 08–204, Docket No. 4058).

Petitioner was sentenced on July 30, 2010 to 121 months imprisonment on all counts, to be served concurrently. (Criminal 08–204, Docket Nos. 4071, 4072). A notice of appeal was filed on August 6, 2010. (Criminal 08–204, Docket No. 4099). The appeal was voluntarily dismissed pursuant to Fed. R.App. P. 42(b) on July 12, 2011. (Criminal 08–204, Docket No. 4454).

Petitioner moved to reduce his 121–month imprisonment sentence based on retroactive application of sentencing guidelines pursuant to 18 U.S.C. § 3582(c)(2) on October 13, 2011. (Criminal 08–204, Docket No. 4517). The court granted the motion upon stipulation and reduced petitioner's sentence to 120 months imprisonment. (Criminal 08–204, Docket No. 4863, dated March 19, 2012)[5].

## Title 28 U.S.C. § 2255

This matter is before the court on petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, supported by a 10–page memorandum of law, filed on July 10, 2012. (Docket No. 3.)[6] Petitioner argues that he suffered a Sixth Amendment violation due to ineffective assistance of counsel resulting from his attorneys' failing to communicate an available global plea offer made by the United States. Specifically, he alleges that his first attorney, Jose Gaztambide–Aneses, was told that there was a plea offer available to petitioner but that this offer was not communicated to petitioner, who was told by defense counsel that there was no plea offer available and that the best he could do was enter a straight plea without the benefit of a plea agreement. (Docket No. 3 at 6). Petitioner later learned through other counsel that a plea offer was available and had been allowed to expire by defense counsel[7].

Petitioner also argues that his second court-appointed counsel, Jorge Vega-Pacheco, was ineffective in failing to move to withdraw the guilty plea since he did not inquire if a plea offer existed as the one "all his co-defendants got." (Docket No. 3 at 7). Defense counsel arguably told him that no plea offers were available for anyone and that a straight plea was the best option. When petitioner showed defense counsel copies of other plea agreements, counsel got defensive, said it was too late, and said he could not withdraw the change

5. Petitioner filed another motion to reduce sentence pursuant to 18 U.S.C. § 3582(c) on June 28, 2012, after having had his sentenced reduced to the mandatory statutory minimum. The formal motion omits mentioning his previously granted and identical request. (Criminal 08–204(DRD), Docket No. 5111).

6. The motion and memorandum make no mention of the subsequent relief sought and granted, nor of the current 120–month sentence.

7. There was supposedly an early plea offer by the government of 6–7 years. Petitioner states that he found out all of his co-defendants had actually signed plea agreements of 6–7 years. (Docket No. 3–1 at 5). This is clearly inaccurate and misleading. In the group of runners alone, composed of 14 defendants, three of those 14 received sentences in that range, and none of those were subject to an Information under 21 U.S.C. § 851. Four other runners, Jose A. Rivera–Rivera, Angel Torres–Padilla, Felix Quinones–Rivera and Christopher Gonzalez–Jorge, received sentences of 120 months imprisonment. The inaccuracy of petitioner's allegation that all defendants received a munificent offer is clear from the number of sentences that provided for or exceeded 120 months imprisonment. Over 30 sentences fit into that category, including those of one seller and one facilitator. Most of those were described as the leaders of the criminal organization. About ten defendants were actually sentenced within the range of 6–7 years.

of plea. At sentencing, counsel arguably told petitioner that there was an early plea offer that had now expired. (Docket No. 3 at 7). Petitioner seeks an evidentiary hearing in order for the court to determine if re-sentencing is warranted, or for the court to issue a certificate of appealability. (Docket No. 3 at 15). Petitioner estimates that he received a sentence of 47 months longer than the high end of the plea offer of 6–7 years. (Docket No. 3–1 at 6). In real terms, petitioner argues that he received a sentence that was almost twice the amount that was in the plea offer that he never got the opportunity to accept.

As to attorney Vega–Pacheco, petitioner states that the attorney told him he should have accepted the first plea offer, and when told that he never got the offer, the attorney told him that it was too late. Petitioner told the attorney to file a notice of appeal, which he failed to do. Petitioner cites several cases for the proposition that it is ineffective assistance for an attorney to fail to file a notice of appeal when instructed[8]. (Docket No. 3–1 at 8). Contrary to petitioner's statement, attorney Vega–Pacheco did file a notice of appeal from the judgment and sentence on August 6, 2010. (Crim. No. 08–204, Docket No. 4099). This misstatement further taxes credulity. Jailhouse lawyers or *pro se* litigants should at least be accurate with facts that can neatly be verified in the court docket.

In response to the section 2255 motion, the government maintains that petitioner's claims are meritless, and contrary to the record and his own representations. Specifically, as to the plea agreement, the government notes that on April 24, 2009, petitioner rejected the final plea offer which contained a sentencing recommendation of 108 months for a Criminal History Category of I or II. (Docket No. 7 at 9). Petitioner elected to go to trial. The government notes that petitioner made a knowing and voluntary withdrawal of his motion to withdraw guilty plea, quoting extensively from the sentencing transcript. The government argues that petitioner should not be allowed to renege on his prior statements to the court at this time. Ultimately petitioner agreed at that time that issues remained to be resolved at sentencing, issues which remained notwithstanding the straight plea. Any confusion was resolved by Mr. Vega Pacheco's explanations to petitioner after he reviewed the plea transcript with petitioner. Petitioner then agreed to return to the status of having made a straight plea and that he was not coerced in making that decision. Finally, petitioner was aware of the consequences of reverting to the straight plea.

On September 24, 2012, petitioner filed a reply to the response. (Docket No. 11.) He argues that he is entitled to a hearing[9] and re-sentencing consistent with the global plea agreement that was available to him and to all his codefendants. He stresses he was never presented with a written plea agreement from attorney Gaztambide. He disagrees with the representations made by attorney Gaztambide as to their meetings. Petitioner argues that he was never presented with the final plea agreement of 108 months. Petitioner also

---

8. *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); *Hodge v. United States,* 554 F.3d 372 (3d Cir.2009); *United States v. Poindexter,* 492 F.3d 263 (4th Cir.2007); *United States v. Tapp,* 491 F.3d 263 (5th Cir.2007): *Campusano v. United States,* 442 F.3d 770 (2d Cir.2006).

9. Petitioner points out that the government has argued that he has not sought a hearing. However, that is not the case. In petitioner's motion to vacate, the request for evidentiary hearing is clearly made. The request is more opaque at the end of the accompanying memorandum.

argues that there must have been a previous plea offer since the 108 months was called the final agreement. Petitioner stresses that counsel has an obligation to communicate formal plea offers from the prosecution on terms which may be favorable to the defense. *See Missouri v. Frye,* — U.S. ——, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012). Failure of counsel to communicate the offer renders assistance of counsel ineffective and arguably triggers remand for an evidentiary hearing. *See United States v. Rodriguez Rodriguez,* 929 F.2d 747, 753 (1st Cir.1991). Petitioner concludes that he was prejudiced by failure to have been presented with the first offer that everyone else received.

Having considered the arguments of the parties and for the reasons set forth below, I disagree with petitioner's argument, conclude that his proffered facts are clearly refuted by the record, and recommend that petitioner's motion to vacate, set aside, or correct sentence be DENIED without evidentiary hearing.

## II. DISCUSSION

Under section 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a); *Hill v. United States,* 368 U.S. 424, 426–27 n. 3, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *David v. United States,* 134 F.3d 470, 474 (1st Cir.1998); *Mattei–Albizu v. United States,* 699 F.Supp.2d 404, 407 (D.P.R.2010). Collateral attack on non constitutional and non jurisdictional "claims are properly brought under section 2255 only if the claimed er-

ror is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *Knight v. United States,* 37 F.3d 769, 772 (1st Cir.1994) (quoting *Hill v. United States,* 368 U.S. at 428, 82 S.Ct. 468). A cognizable section 2255 claim must reveal "exceptional circumstances" that make the need for redress evident. *David v. United States,* 134 F.3d at 474 (citing *Hill v. United States,* 368 U.S. at 428, 82 S.Ct. 468). A claim of ineffective assistance of counsel is one such constitutional violation that may be raised by way of a section 2255 motion. *See United States v. Kayne,* 90 F.3d 7, 14 (1st Cir. 1996); *Mattei–Albizu v. United States,* 699 F.Supp.2d at 407.

"[A] § 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently-incredible.'" *United States v. McGill,* 11 F.3d 223, 226 (1st Cir.1993) (citing *Shraiar v. United States,* 736 F.2d 817, 818 (1st Cir.1984)); *see Barrett v. United States,* 965 F.2d 1184, 1186 (1st Cir.1992); *United States v. DiCarlo,* 575 F.2d 952, 954 (1st Cir.1978). "[D]efendants bear the burden of establishing by a preponderance of the evidence that they are entitled to relief. . . . This includes the burden of showing that they are entitled, if they claim it, to an evidentiary hearing." *Id.* at 954 (citing *Coon v. United States,* 441 F.2d 279, 280 (5th Cir.1971)).

### Ineffective Assistance of Counsel

"In all criminal prosecutions, the accused shall enjoy the right to . . . the Assistance of Counsel for his defence." U.S. Const. amend. 6. To establish a claim of ineffective assistance of counsel, a peti-

tioner "must show that counsel's performance was deficient," and that the deficiency prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[T]he 'Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.'" *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir.2007) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)). The two part test for constitutionally ineffective assistance of counsel was set forth in the *Strickland* case. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. 2052; *see also Smullen v. United States*, 94 F.3d 20, 23 (1st Cir.1996); *Knight v. United States*, 37 F.3d at 774. The petitioner "must show that 'counsel's representation fell below an objective standard of reasonableness,' and that 'the deficient performance prejudiced his defense.'" *Owens v. United States*, 483 F.3d 48, 63 (1st Cir.2007) (quoting *Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. 2052). The defendant bears the burden of proof for both elements of the test. *See Cirilo–Muñoz v. United States*, 404 F.3d 527, 530 (1st Cir. 2005) (citing *Scarpa v. Dubois*, 38 F.3d 1, 8–9 (1st Cir.1994)). There is no doubt that *Strickland* also applies to representation outside of the trial setting, which would include sentence and appeal. *See Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Bonneau v. United States*, 961 F.2d 17, 20–22 (1st Cir.1992); *United States v. Tajeddini*, 945 F.2d 458, 468–69 (1st Cir.1991), abrogated on other grounds by *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). *A fortiori*, the right to effective assistance of counsel applies to the plea bargaining process. *See Missouri v. Frye*, 132 S.Ct. at 1408–1409. Indeed, the "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings."

*Id.* at 1405, quoting *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), which in turn quotes *United States v. Wade*, 388 U.S. 218, 227–228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

"'[J]udicial scrutiny of counsel's performance must be highly deferential,' and 'every effort [should] be made to eliminate the distorting effects of hindsight.'" *Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir.1996) (quoting *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. 2052). The test includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smullen v. United States*, 94 F.3d at 23 (quoting *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. 2052).

The second element of the *Strickland* test "also presents a high hurdle. 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Argencourt v. United States*, 78 F.3d at 16 (quoting *Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. 2052). There must exist a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dugas v. Coplan*, 428 F.3d 317, 334 (1st Cir.2005) (quoting *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052). "[A] reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *González–Soberal v. United States*, 244 F.3d 273, 278 (1st Cir.2001) (quoting *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052).

Assuming that counsels' representation fell below an objective standard of reasonableness, petitioner would still have to prove that they resulted in prejudice to his case. *See Owens v. United States*, 483

**62**

F.3d at 63 (quoting *Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. 2052). As stated above, there must be a reasonable probability that but for counsels' actions, the result of the proceedings would have been different. *See Dugas v. Coplan*, 428 F.3d at 334 (quoting *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052).

▮ A review of the sentencing transcript sheds light on petitioner's argument. (Criminal No. 08–204, Docket No. 4314.) On July 30, 2010, petitioner appeared for sentence. At that time, the court asked him if he was withdrawing his motion to withdraw plea, and whether he was reverting to his status of having made a straight plea. Petitioner answered yes to both. (Sentencing Transcript p. 7, lines 8, 11.) This was done without coercion and with knowledge of the consequences.

The United States agreed with the sentencing guideline calculations in the Pre–Sentence Report of the U.S. Probation Office. (*Id.* at 9–10.) The prosecutor noted that on any given date, petitioner would handle 50 grams of crack cocaine during the three years he was a member of the drug conspiracy. (*Id.* at 11.) The government requested a sentence in the range of 292 to 365 months based on a total offense level of 40, considering that it was reasonably foreseeable for petitioner to be involved in the distribution of a total of 54 kilograms of crack cocaine. (*Id.* at 13–14.) After discussion between the attorneys, and petitioner with defense counsel, petitioner agreed, for purposes of sentencing, that he possessed 50 grams of cocaine base, which would place him at a base offense level of 30, which ultimately provided for a sentencing range of 97 to 121 months. (*Id.* at 19.) Petitioner was aware that the court could not go below the statutory minimum of 120 months. The prosecutor reminded the court that the

sentence could not be lower because of a prior conviction. (*Id.* at 20.) Petitioner accepted this proposal. (*Id.* at 21.)

At the change of plea hearing held on May 11, 2009, petitioner and three others entered straight pleas. Upon precise questioning by the court, petitioner stated that he had met with his attorney, Mr. Gaztambide, about 15 times. (Criminal No. 08–204, Docket No. 3979, Plea Transcript at p. 7). As to the subject of entering a plea, petitioner noted that he had met with counsel five times. (*Id.* at 11). Notwithstanding the statutory minimum, the court explained that it was possible to receive less than the statutory minimum if the amount of drugs applicable did not reach the threshold indicated in the statute. (*Id.* at 32.) Defense counsel was hoping for a sentence of five to six years. (*Id.* at 34–35.) All of these defendants were disputing the amount of drugs that was being attributed to them. Petitioner understood that he could receive a low or a high sentence. (*Id.* at 37).

▮ "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *see Nieves–Ramos v. United States*, 430 F.Supp.2d 38, 43 (D.P.R.2006); *Caraballo Terán v. United States*, 975 F.Supp. 129, 134 (D.P.R.1997).

▮ It is well settled that a court "will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." *United States v. Parrilla–Tirado*,

22 F.3d 368, 373 (1st Cir.1994) (quoting *United States v. Pellerito,* 878 F.2d 1535, 1539 (1st Cir.1989)). "[I]t is the policy of the law to hold litigants to their assurances at a plea colloquy." *Torres–Quiles v. United States,* 379 F.Supp.2d 241, 248–49 (D.P.R.2005) (citing *United States v. Marrero–Rivera,* 124 F.3d 342, 349 (1st Cir. 1997)). Thus, the petitioner "should not be heard to controvert his Rule 11 statements ... unless he [has] offer[ed] a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]." *United States v. Butt,* 731 F.2d 75, 80 (1st Cir.1984). "[T]he presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." *United States v. Butt,* 731 F.2d at 80 (citing *Crawford v. United States,* 519 F.2d 347, 350 (4th Cir.1975)).

Even without a formal plea agreement, defense counsel and the prosecution clearly agreed upon an accountability for an amount of crack cocaine which greatly favored petitioner under the Sentencing Guidelines, this after the government had announced that it was ready to proceed with a hearing to show that petitioner was accountable for much more cocaine base. Notwithstanding the existence of a Section 851(a) Information lurking in the shadows, petitioner received the benefit of guideline sentencing based on the limitation which the government agreed to.

### Communication of Plea Offer

In *Missouri v. Frye,* 132 S.Ct. at 1408, the Supreme Court held that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.

If such a formal offer was not communicated to a defendant, and the offer thus lapsed, then "... defense counsel did not rendered the effective assistance that the Constitution requires." *Id.; see Lafler v. Cooper,* —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). The inquiry does not rest here however. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye,* 132 S.Ct. at 1409. The defendants must also demonstrate "... a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it ..." *Id.*

Again, it is clear that not all defendants received the generous offer described by petitioner, offers which he states he had seen in writing. The record is clear that the first formal offer of 108 months was made in writing and was rejected by petitioner in court on April 24, 2009. Petitioner notes that this was called the final plea agreement. Nevertheless, it was clearly the first and last formal plea agreement as reflected by subsequent negotiations between defense counsel and the prosecution. Indeed, the court was witness to some of this negotiation, particularly in relation to attribution. Aside from petitioner's rote and incorrect allegation that all other defendants received plea offers of 6–7 years, there is no credible information that any formal plea offer was made to petitioner prior to the written offer of 108 months, which he now says was never communicated to him by his attorney and which he rejected in court because he simply wanted less time in prison, a common wish among his cohorts, some of whom waited another

year to enter guilty pleas. There was no violation of *Missouri v. Frye* in the equation petitioner presents for review.

In view of the above, I find that petitioner has failed to establish that his counsels' representation fell below an objective standard of reasonableness. *See Strickland v. Washington,* 466 U.S. at 686–87, 104 S.Ct. 2052; *United States v. Downs–Moses,* 329 F.3d 253, 265 (1st Cir.2003). He is also unable to establish that any deficiencies resulted in a prejudice against him in the criminal proceedings. *See Owens v. United States,* 483 F.3d at 63 (quoting *Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. 2052). Petitioner downplayed his role in the criminal enterprise, portraying himself as an addict. (Criminal No. 08–204, Docket No. 2423 at 2.) He ignores the fact that he was offered an extremely favorable agreement[10] of 108 months imprisonment which he rejected. The statement that all defendants received offers of 6–7 years is clearly wrong, notwithstanding the fact that the defendants who entered guilty pleas earlier and were neither runners nor leaders, received sentences in the 60–70 month range, some higher, some lower.[11] It is impossible to find that any claimed error has produced " 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " *Knight v. United States,* 37 F.3d at 772 (quoting *Hill v. United States,* 368 U.S. at 428, 82 S.Ct. 468). Petitioner ultimately agreed to be

held accountable for 50 grams of crack cocaine. He was sentenced on July 30, 2010. The mandatory minimum term of imprisonment for the amount of crack cocaine petitioner was held accountable for at that time was ten years. Had he been sentenced after August 3, 2010, the effective date of the Fair Sentencing Act, the mandatory minimum term would have been five years. 21 U.S.C. § 841(b)(1)(A)(iii) (amended 2010). *See Dorsey v. United States,* 567 U.S. ——, 132 S.Ct. 2321, 2331–2335, 183 L.Ed.2d 250 (2012); *United States v. Goncalves,* 642 F.3d 245, 252–255 (1st Cir.), cert. denied —— U.S. ——, 132 S.Ct. 596, 181 L.Ed.2d 437 (2011). Petitioner later received the benefit of a one month reduction and agreed that the statutory minimum sentence applied in the stipulation for reduction of sentence which was approved by the court. (Criminal No. 08–204, Docket No. 4631 at 2, dated December 14, 2011). He may not now espouse an argument contrary to a fact stipulated to by him in order to have his sentence reduced. Courts have a right to rely on the representations of defendants made under oath. The inaccurate statements and allegations made by petitioner in relation to plea agreements he saw and had in his possession, and knowledge that he had as to the offers made to all co-defendants, as well as the notice-of-appeal faux argument, plus his rejection of the first formal plea agreement are all insufficient to create a factual issue as to whether he was denied

---

**10.** The agreement is extremely favorable when one considers that the prosecution could have filed an Information providing for an enhanced penalty upon conviction and had not done so by the date that the first change of plea hearing was held. Furthermore, petitioner was then held accountable for a drug quantity below that reflected in the indictment.

**11.** A prosecutor who would offer to treat all members of a highly stratified large criminal enterprise equally, and with equal leniency as alleged here, would not only lose all credibility but would be ignoring the clear language of *United States v. Colon–Solis,* 354 F.3d 101, 103 (1st Cir.2004) and *United States v. Correy,* 570 F.3d at 382–83. As the court made clear, neither the prosecution, nor the court, nor the U.S. Probation Office are allowed to overlook these cases.

his constitutional right to an effective assistance of counsel by either of his two attorneys. Notwithstanding his allegation that he was not informed by counsel of the 108–month plea agreement, signed by members of the Criminal Division of the Office of the United States Attorney, that agreement is the one he clearly rejected in court before U.S. Magistrate Judge Camille Velez–Rive on April 24, 2009. Petitioner's conclusory and inaccurate ineffective assistance of counsel claims lack any semblance of colorable merit. The court was painstakingly meticulous in individualizing punishment in this complex case. The ultimate sentence petitioner received was the result of such caring. Petitioner clearly never wanted to "... run the gauntlet of trial." *Moreno–Espada v. United States,* 666 F.3d 60, 66 (1st Cir. 2012). Rather, he understandably wanted to negotiate a better plea agreement. He was not alone in that respect as he was not the only runner to reject a guilty plea after negotiations because he was not in agreement with the plea offer. (Criminal No. 08–204, Docket No. 1456 (Alfredo Rivera–Torres)). That petitioner did not plea guilty under more favorable circumstances is no fault of his attorneys, attorneys who did not violate his Sixth Amendment right to effective assistance of counsel, attorneys who clearly attempted to obtain the most favorable sentence that they could under the circumstances. Petitioner may believe that his two attorneys violated his rights rather than defend them, as they did. Men willingly believe what they wish.

Accordingly, it is my recommendation that petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 be DENIED without evidentiary hearing.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).

In San Juan Puerto Rico this 25th day of October, 2012.